MARY PETROWSKI *v.* NORWICH FREE ACADEMY ET AL.
(12622)

PETERS, C. J., HEALEY, SHEA, SANTANIELLO and CALLAHAN, Js.

Argued December 10, 1985—decision released March 18, 1986

*Wesley W. Horton,* with whom were *Richard D. O'Connor* and *Susan M. Cormier,* for the appellants (defendants).

*Marvin M. Horwitz,* for the appellee (plaintiff).

SHEA, J. This is an appeal, after certification, from a judgment of the Appellate Court reversing a decision of the Superior Court, which had dismissed the plaintiff's appeal from the termination of her employment contract by the board of trustees of the Norwich Free Academy. We granted certification to review the judgment of the Appellate Court that the failure of two members of the board to disqualify themselves in the determination of the plaintiff's case, because of their inherent conflicts of interests, violated federal constitutional due process principles. We reverse the judgment of the Appellate Court.

The decision of the Appellate Court fully describes the underlying facts and procedural history. *Petrowski v. Norwich Free Academy,* 2 Conn. App. 551, 481 A.2d 1096 (1984); see Siegal, "Labor Relations and Employment Law Developments in Connecticut in 1984," 59 Conn. B.J. 141, 144–45 (1985). The plaintiff, a tenured teacher at Norwich Free Academy, upon receiving written notice that the termination of her contract was under consideration, requested a hearing before the board of trustees of the high school pursuant to General Statutes (Rev. to 1983) § 10-151 (b).[1] During that hearing, she sought to have two members of the board, Wayne G. Tillinghast and James J. Dutton, disqualify themselves on the basis of their membership in a law firm that represented the academy in other unrelated legal matters. They refused to disqualify themselves and continued to participate in the proceedings. The

---

[1] The Norwich Free Academy is a privately endowed secondary school which exists by virtue of a corporate charter granted by the General Assembly in 1854. 3 Resolutions and Private Acts, pp. 259–60. For purposes of General Statutes (Rev. to 1983) § 10-151 (b) which details the procedure for termination of a tenured teacher's employment contract, the board of trustees of an endowed high school, such as Norwich Free Academy, has the same status as a board of education of a public high school. See General Statutes § 10-34. Public Acts 1983, No. 83-398, changed § 10-151 (b) to § 10-151 (d).

board unanimously voted to terminate the plaintiff's employment contract. The plaintiff appealed to the Superior Court challenging the participation of the two attorneys. That court found that neither Tillinghast nor Dutton was prejudiced against the plaintiff, and that the personal interests of both in the outcome of the proceedings were too nebulous and remote to have mandated their disqualification. The court rendered judgment in favor of the defendants and dismissed the plaintiff's appeal. Thereafter, the plaintiff appealed to the Appellate Court.

The Appellate Court reversed the Superior Court's decision, concluding that the presence of Tillinghast and Dutton on the board of trustees per se violated the plaintiff's federal due process rights because it created an appearance of impropriety. The court reached its decision by equating the due process test for disqualificaton of an administrative adjudicator with the standard for judicial disqualification. "When administrators act in a quasi-judicial capacity, as the board in this case did, their functions and that of judges most closely merge and the judicial model to test impropriety becomes an acceptable one." *Petrowski* v. *Norwich Free Academy,* supra, 560.

The defendants' request to this court for certification raised a single question: Is the federal due process test for disqualification of an administrative official acting in a quasi-judicial capacity the same as the test for the disqualification of a judge? The plaintiff filed a preliminary statement of issues under Practice Book § 3012 (a), in order to provide an alternative basis for affirming the Appellate Court's decision. The relevant issue, broader in scope than that before us on certification, is: "Did the defendants violate the plaintiff's right to due process under Connecticut General Statutes [Rev. to 1983] § 10-151 and the Fourteenth

Amendment to the United States Constitution when trustees Dutton and Tillinghast participated in the hearing and decision, although they were disqualified?"[2]

In this appeal the focus of our review is not the judgment of the Superior Court but of the Appellate Court. We do not hear the appeal de novo. The only questions we need consider are those squarely raised by the petition for certification and the appellee's preliminary statement of issues, and we will ordinarily consider these issues in the form in which they have been framed in the Appellate Court. See Practice Book §§ 3012 (a), 3154; *State* v. *Beckenbach,* 198 Conn 43, 47, 501 A.2d 752 (1985); *State* v. *Torrence,* 196 Conn. 430, 433, 493 A.2d 865 (1985).

When a school board considers terminating a teacher's contract it is acting in a quasi-judicial capacity. *Catino* v. *Board of Education,* 174 Conn. 414, 417, 389 A.2d 754 (1978). Under our statutes, a tenured teacher has a right to continued employment except upon a showing of cause for termination or a bona fide elimination of the teaching position. General Statutes (Rev. to 1983) § 10-151 (b). Such a right is a property right protected under the due process clause of the fourteenth amendment to the United States constitution. *Board of Regents* v. *Roth,* 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972); *Lee* v. *Board of Education,* 181 Conn. 69, 72, 434 A.2d 333 (1980). Because the legislature has afforded a teacher dismissed for cause the right to judicial review of that determination, it is our task to ensure that that right is meaningfully

---

[2] In their petition for certification the defendants also claimed error in the Appellate Court's rescript which set aside the Superior Court's judgment and remanded the case with direction to reverse the decision of the board of trustees. Although the plaintiff conceded error in her brief and at argument, we need not address this claim in light of our disposition of the first issue.

protected. Id., 83. Such protection necessarily includes a fair hearing by an impartial panel. *Catino* v. *Board of Education,* supra, 418.

The central issue in this case, as correctly posed by the majority opinion below, "becomes what constitutes an impartial hearing panel sufficient to satisfy constitutional due process. Due process requires a fair hearing before a fair tribunal, which principle applies with equal vigor to administrative adjudicatory proceedings. *Gibson* v. *Berryhill,* 411 U.S. 564, 579, 93 S. Ct. 1689, 36 L. Ed. 2d 488 (1973)." *Petrowski* v. *Norwich Free Academy,* supra, 554.

The defendants do not dispute the proposition, as stated in the dissenting opinion of the Appellate Court, that "had Tillinghast and Dutton been judges participating in a judicial proceeding, they would have been disqualified, because the relationship between their law firm and the academy would have violated the governing standard for judicial disqualification, which is the reasonable appearance of impropriety." *Petrowski* v. *Norwich Free Academy,* supra, 566 (*Borden, J.,* dissenting); see *Papa* v. *New Haven Federation of Teachers,* 186 Conn. 725, 746, 444 A.2d 196 (1982). The claim of the defendants is simply that the Appellate Court erred in equating the due process standards governing disqualificaton of administrative adjudicators with the principles governing judicial disqualification.

A due process analysis requires balancing the governmental interest in existing procedures against the risk of erroneous deprivation of a private interest through the use of these procedures. *Mathews* v. *Eldridge,* 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). Due process demands, however, the existence of impartiality on the part of those who function in judicial or quasi-judicial capacities. *N.L.R.B.* v. *Ohio New & Rebuilt Parts, Inc.,* 760 F.2d 1443, 1451 (6th Cir. 1985);

see, e.g., *Marshall* v. *Jerrico, Inc.,* 446 U.S. 238, 242–43, 100 S. Ct. 1610, 64 L. Ed. 2d 182 (1980); *Wolkenstein* v. *Reville,* 694 F.2d 35 (2d Cir. 1982), cert. denied, 462 U.S. 1105, 103 S. Ct. 2452, 77 L. Ed. 2d 1332 (1983). The courts recognize the presumption that administrators serving as adjudicators are unbiased. See *Withrow* v. *Larkin,* 421 U.S. 35, 47, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975); *United States* v. *Morgan,* 313 U.S. 409, 421, 61 S. Ct. 999, 85 L. Ed. 1429 (1940). This presumption can be rebutted by a showing of a conflict of interests; see *Gibson* v. *Berryhill,* 411 U.S. 564, 578–79, 93 S. Ct. 1689, 36 L. Ed. 2d 488 (1973); *Ward* v. *Monroeville,* 409 U.S. 57, 60, 93 S. Ct. 80, 34 L. Ed. 2d 267 (1972); but the burden of establishing a disqualifying interest rests on the party making the contention. *Schweiker* v. *McClure,* 456 U.S. 188, 102 S. Ct. 1665, 72 L. Ed. 2d 1 (1982). The impermissible interest asserted must be realistic and more than "remote." *Marshall* v. *Jerrico, Inc.,* supra, 250.

" 'The fact that [an administrative hearing officer] might have been disqualified as a judge . . . does not, either in principle or under the authorities, infect the hearing with a lack of due process.' *Lopez* v. *Henry Phipps Plaza South, Inc.,* 498 F.2d 937, 944 (2d Cir. 1974)." *Petrowski* v. *Norwich Free Academy,* supra, 567 (*Borden, J.,* dissenting); see *Goldberg* v. *Kelly,* 397 U.S. 254, 271, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970). In *Schweiker* v. *McClure,* supra, the United States Supreme Court reversed a decision of the District Court which had held that the connection between an insurance carrier whose employees initially had denied Medicare claims and the hearing officers appointed by the carrier to review such denials, whose salaries were paid from federal funds, created a constitutionally intolerable risk of bias against Medicare claimants. The lower court had based its decision, in part, on the judicial canons concerning disqualification. *McClure* v. *Harris,*

503 F. Sup. 409, 414–15 (N.D. Cal. 1980); Code of Judicial Conduct 3 (C) (1) (b). The Supreme Court reversed, finding no basis for a disqualifying interest among the hearing officers and noting that the district court's analogy to judicial canons was not "apt." *Schweiker* v. *McClure,* supra, 197 n.11. In *Florasynth, Inc.* v. *Pickholz,* 750 F.2d 171, 173–74 (2d Cir. 1984), the Second Circuit Court of Appeals noted that although arbitrators do act in a quasi-judicial capacity, the disqualification standard for judges need not be applied. "The mere appearance of bias that might disqualify a judge will not disqualify an arbitrator." Id.; see *Morelite Construction Corporation* v. *New York City District Council Carpenters Benefit Funds,* 748 F.2d 79, 85 (2d Cir. 1984); *International Produce, Inc.* v. *A/S Rosshavet,* 638 F.2d 548, 552 (2d Cir.), cert. denied, 451 U.S. 1017, 101 S. Ct. 3006, 69 L. Ed. 2d 389 (1981).

In support of the proposition that due process requires that administrative adjudicators performing quasi-judicial functions be held to judicial standards of conduct, the Appellate Court relied on *Withrow* v. *Larkin,* 421 U.S. 35, 46–51, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975). The majority opinion concluded that "[t]he due process requirement of an impartial hearing body in the quasi-judicial realm is equivalent to that requirement in the judicial realm." *Petrowski* v. *Norwich Free Academy,* supra, 560. An examination of *Withrow* v. *Larkin,* however, supports only the proposition that conduct by an administrator which would not require disqualification under judicial standards is constitutionally permissible. From this holding it is logical to deduce only that conduct complying with judicial standards also satisfies those applicable to administrative adjudicators. The conclusion of the Appellate Court, equating administrative with judicial standards, assumes that *Withrow* stands also for the converse proposition, that an interest disqualifying a judge would necessarily disqualify an administrator.

The applicable due process standards for disqualification of administrative adjudicators do not rise to the heights of those prescribed for judicial disqualification. *Schweiker* v. *McClure, supra.* The canons of judicial ethics go far toward cloistering those who become judges, the ultimate arbiters of constitutional and statutory rights, from all extraneous influences that could even remotely be deemed to affect their decisions. Such a rarefied atmosphere of impartiality cannot practically be achieved where the persons acting as administrative adjudicators, whose decisions are normally subject to judicial review, often have other employment or associations in the community they serve. It would be difficult to find competent people willing to serve, commonly without recompense, upon the numerous boards and commissions in this state if any connection with such agencies, however remotely related to the matters they are called upon to decide, were deemed to disqualify them. Neither the federal courts nor this court require a standard so difficult to implement as a prerequisite of due process of law for administrative adjudication.

Further, in reference to the plaintiff's broader constitutional claim raised in her preliminary statement of issues, she has simply failed to show that Tillinghast and Dutton had a disqualifying interest sufficient to overcome the "presumption of honesty and integrity" of the board of trustees. *Withrow* v. *Larkin, supra,* 47. The applicable due process standards for disqualification of officials acting in a judicial or quasi-judicial capacity are detailed in *In re Murchison,* 349 U.S. 133, 137, 75 S. Ct. 623, 99 L. Ed. 942 (1955). "A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case

and no man is permitted to try cases where he has an interest in the outcome." Id., 136. The constitutional parameters of this standard are discussed in two United States Supreme Court cases, *Tumey* v. *Ohio,* 273 U.S. 510, 47 S. Ct. 437, 71 L. Ed. 749 (1927), and *Dugan* v. *Ohio,* 277 U.S. 61, 48 S. Ct. 439, 72 L. Ed. 784 (1928). Although neither of these cases is determinative we must look to each in evaluating the case before us. See *Wolkenstein* v. *Reville,* supra, 39.

In *Tumey* v. *Ohio,* supra, the court invalidated a procedure whereby the mayor of the village assessed fines against defendants convicted of violating the state's prohibition act. The mayor received costs, in addition to his regular salary, as compensation for hearing such cases. No costs were paid to him, however, unless the defendant was convicted. Under the state statute the village retained one half of the fines assessed in the court. The procedure was held constitutionally defective because (1) the mayor as an individual had a "direct, personal, pecuniary interest" in the costs he received, and (2) as the village chief executive he had a strong "official motive" to assess fines to improve the financial position of the village. Id., 531–35.

In *Dugan* v. *Ohio,* supra, a similar procedure was upheld. Because the mayor of the city was a salaried official and did not receive costs, the first ground of *Tumey* v. *Ohio* was inapplicable. Despite the fact that one half the fines imposed were retained by the city, the court sustained the procedure because the mayor was not, as in *Tumey* v. *Ohio,* the chief executive of the city. The mayor's power under the city charter, as one of the five members of the city commission, was too "remote" to create a practical conflict of interests. *Dugan* v. *Ohio,* supra, 65; see also *Marshall* v. *Jerrico, Inc.,* supra (child labor violations adjudicated by administrators employed by department of labor; department reimbursed for costs in assessing fines; due process

claim rejected because no "reasonable possibility" that administrator's judgment would be colored by prospect of institutional gain); *Hortonville Joint School District No. 1* v. *Hortonville Education Assn.,* 426 U.S. 482, 96 S. Ct. 2308, 49 L. Ed. 2d 1 (1976) (teacher disciplinary proceedings conducted by seven person board; due process challenge rejected because board members had no personal or financial interest that required disqualification); *Ward* v. *Monroeville,* supra (due process violation where village received substantial portion of assessed fines and mayor had "wide executive power"); *N.L.R.B.* v. *Ohio New & Rebuilt Parts, Inc.,* supra, 1451 (possibility of "performance awards" to labor adjudicators from efficient adjudication of disputes does not violate due process); *Simard* v. *Board of Education,* 473 F.2d 988 (2d Cir. 1973) (no due process violation where local board of education denied the plaintiff tenure, after the board had engaged in "heated negotiations" with the plaintiff, because the relationship established only potential, rather than actual, bias).

From the viewpoint of these guidelines, participation by Tillinghast and Dutton did not render the termination hearing defective under the federal constitution. There was no evidence that either trustee had a "direct, personal, pecuniary interest" in the termination of the plaintiff. Furthermore, since they were only two members of an eight person board of trustees, they lacked a sufficient "official motive" to render the proceeding constitutionally infirm. *Dugan* v. *Ohio,* supra, 65. Tillinghast and Dutton's membership in the law firm that represents Norwich Free Academy on unrelated matters is too remote and tenuous a connection to have required, under due process principles, their disqualification from the board.

Quite apart from due process, the plaintiff also argues that under state law the presence of Tillinghast and Dutton on the board deprived her of a fair and impar-

tial tribunal for her termination hearing.[3] She relies on the principle first declared in *Low* v. *Madison,* 135 Conn. 1, 6, 60 A.2d 774 (1948), that the appearance of impropriety created by a public official's participation in a matter in which he has a pecuniary or personal interest is sufficient to require disqualification. See General Statutes §§ 8-11 and 8-21. "This prophylactic rule serves the salutary purposes of promoting public confidence in the fairness of the decision-making process and preventing the public official from placing himself in a position where he might be tempted to breach the public trust bestowed upon him. See *Thorne* v. *Zoning Commission,* [178 Conn. 198, 203–205, 423 A.2d 861 (1979)]." *Gaynor-Stafford Industries, Inc.* v. *Water Pollution Control Authority,* 192 Conn. 638, 649–50, 474 A.2d 752 (1984). The test is not whether the personal interest does conflict but whether it reasonably might conflict. *Josephson* v. *Planning Board,* 151 Conn. 489, 493–95, 199 A.2d 690 (1964). If a member of a board of education fails to disqualify himself despite a real conflict of interests, the action of the board on which he participated is rendered invalid. See *Kovalik* v. *Planning & Zoning Commission,* 155 Conn. 497, 499, 234 A.2d 838 (1967).

---

[3] In her preliminary statement of alternative issues upon which the decision of the Appellate Court may be affirmed, the plaintiff refers to a violation of her "right to due process under Connecticut General Statutes § 10-151" as well as under the federal constitution. Despite the contention of the defendants to the contrary, we construe this reference as an invocation of state decisional law relating to the disqualification of administrative adjudicators. General Statutes (Rev. to 1983) § 10-151 (b) sets forth the procedure for termination of a tenured teacher, such as the plaintiff, including the right to a hearing before the board of education or a statutory "impartial hearing panel." Even though the plaintiff chose not to exercise her option under this subsection to have such an "impartial hearing panel" appointed to hear her case, the statute must also be deemed to require impartiality upon the part of the trustees, acting as a board of education, to the extent demanded by our decisions relating to officials acting in a quasi-judicial capacity. Thus our discussion of the plaintiff's additional claim, which was also raised in the Appellate Court, is appropriate. *State* v. *Torrence,* 196 Conn. 430, 434, 493 A.2d 865 (1985).

Whether an interest justifies disqualification is necessarily a factual question and depends upon the circumstances of the particular case. *Armstrong* v. *Zoning Board of Appeals,* 158 Conn. 158, 171–72, 257 A.2d 799 (1969). In subjecting those circumstances to careful scrutiny, courts must exercise a great degree of caution. *Dana-Robin Corporation* v. *Common Council,* 166 Conn. 207, 214, 348 A.2d 560 (1974). Local governments and school boards would "be seriously handicapped if any conceivable interest, no matter how remote and speculative, would require the disqualification of a [public] official." *Anderson* v. *Zoning Commission,* 157 Conn. 285, 291, 253 A.2d 16 (1968). Here, the Superior Court heard the evidence presented and came to the "factual conclusion" that the interests of Tillinghast and Dutton were too remote and nebulous to have required their disqualification. The evidence presented clearly supported that conclusion.

Moreover, we are constrained to point out that the plaintiff chose to have her case adjudicated by the board of trustees, rather than, as was her statutory option, by a three person "impartial hearing panel" as envisioned by General Statutes (Rev. to 1983) § 10-151 (b). Therefore, she selected as her adjudicators a group of individuals who had a pre-existing fiduciary duty, as members of the board of trustees, to act in the best interests of the academy. The effective operation of this statutory scheme necessitates an assumption that such board members, when faced with an issue of teacher termination, will put aside their general loyalty to the academy and act conscientiously. *Petrowski* v. *Norwich Free Academy,* supra, 570 (*Borden, J.,* dissenting).

Both Tillinghast and Dutton, as well as the other six members of the board, had, by virtue of their very presence on the board of trustees, some prior association with the administration of the academy. None of the board members, including Tillinghast and Dutton, had

any prior association with the plaintiff that could have amounted to a disqualifying interest. The only basis for disqualification presented by the plaintiff was their membership in a law firm that handled legal matters for the academy wholly unrelated to the controversy they were to consider. The attorney-client relationship between their firm and the academy merely created on the part of Tillinghast and Dutton a duty of loyalty to the academy essentially congruent with the fiduciary duty imposed upon them as trustees. We see no reason to presume that this additional ground for their loyalty to the academy should disqualify them any more than the other trustees, who were also obligated to act in the best interests of the institution they served. This "double-layered fealty," as the Appellate Court characterized it, of Tillinghast and Dutton cannot reasonably be deemed to have affected their judgment upon the issues any more than the single-sourced loyalty of the other trustees. The dispute over termination of the plaintiff did not involve Tillinghast and Dutton to a greater extent than the other trustees. There was no showing of any connection between their law firm and the school officials or other persons who were advocating the termination of the plaintiff. We conclude that membership in a law firm that has handled legal matters for an institution that are wholly unrelated to the controversy to be decided or the persons involved therein, does not constitute, under the circumstances of this case, a disqualifying interest for administrative adjudicators under federal or state law.

The judgment of the Appellate Court is reversed, and the case is remanded to that court with direction to reinstate the judgment of the trial court.

In this opinion the other judges concurred.