[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from a decision of the Westport Planning and Zoning Commission [Commission] approving a special permit and related site plan application with conditions. In addition to a claim of conflict of interest, it raises the novel questions whether the Commission improperly imposed conditions CT Page 8380 on the approvals after the initial vote approving the application, and whether the Commission improperly, shortened the appeal period of 15 days in 8-8 of the General Statutes where the legal notice stated that the conditions of approval were on file in the commission's office, but they were not available for the entire 15 day appeal period.
The application before the Commission was made by the Town of Westport for a special permit for the construction of a multi-purpose ball field and baseball field on approximately 70 acres of land on North Avenue in Westport known as Staples High School. The First Selectman, Douglas Wood, as Chief Executor Officer of the town and Stuart McCarthy, the Parks and Recreation Director, acted as agents of the town on the application. The public hearing was held on October 28, 1992. After the public hearing the Commission held an executive session open to the public [called a work session] where it discussed the application and passed a motion approving the special permit and site plan with several stated conditions. Notice of the approval was published on November 4, 1992 in the Westport News. The plaintiff commenced this appeal on November 17, 1992 within the 15 day period in 8-8 of the General Statutes.
The plaintiff, Gladys Floch owns land which abuts the Staples High School property at 70 North Avenue which contains the multi-purpose ball field and the baseball field covered by the application. Section 8-8(a) of the General Statutes defines an aggrieved person as the owner of land that abuts or is within a radius of 100 feet of any portion of the land involved in the decision of the agency. Subsection (b) of that statute allows any person aggrieved by the agency's decision to appeal to the Superior Court within 15 days of publication of the notice of the agency's decision. As the owner of abutting land the plaintiff has proven statutory aggrievement and has standing to maintain this appeal. McNally v. Zoning Commission, 225 Conn. 1,8; Caltabiano v. Planning and Zoning Commission, 211 Conn. 662,665-670.
The merits of the special permit and site plan application are not in dispute in this case and require no discussion. At the trial the plaintiff withdrew its claim that the Commission's failure to publish all the conditions of approval in the legal notice of the decision was illegal. The appeal raises three claims: (1) A Commission member had a conflict of interest under CT Page 83818-11 of the General Statutes and should not have participated in the public hearing and the decision on the application; (2) the Commission or its agents improperly imposed additional conditions on the application after approving it with conditions in the executive session; (3) the published legal notice of the Commission's decision stated that the conditions of the approval were on file in the Commission's office, but in fact were not on file or available for inspection there for one or two days after publication of the legal notice.
Virtually identical claims were raised and decided by Judge Levin in another appeal, Daniel Carnese v. Planning Zoning Commission of the Town of Westport, CV92 0299969, Superior Court at Bridgeport July 6, 1993. The Carnese appeal also involved an application by the Town of Westport for a special permit and site plan for two multi-purpose athletic fields in the same zone. That application was also granted on October 28, 1992 with conditions, published in the same legal notice on November 4, 1992, and the with same problems of availability of the statement of conditions at the Commission's office on the publication date of the decision. Judge Levin's decision in Carnese was in favor of the defendant on the same issues. Whale this court is not required to follow the decision of a another Superior Court judge, under the concept of the law of the case, Breen v. Phelps, 186 Conn. 86, 99, 101, that decision should be followed unless there is good reason to reach a different result, particularly where the other case has identical factual and legal claims.
The conflict of interest claim is based upon the participation of Commissioner Carla Rea, who failed to disqualify herself from participating in the hearing, discussion and deciding of the application. While the primary applicant was the Town of Westport, the defendant has admitted the allegations in paragraph 3 of the appeal that the Town and the Parks and Recreation Commission were the applicants. However, the agents who presented the application for the Town of Westport were the First Selectman and Parks and Recreation Director Michael Rea, the husband of Planning Zoning Commissioner Carla Rea, was a member of the Parks and Recreation Commission when the application was heard and decided. Michael Rea did not participate either individually or as a member of the Parks and Recreation Commission when the application was before the Planning Zoning Commission. In spite of a request by plaintiff's counsel that Carla Rea not participate in hearing CT Page 8382 and deciding the application, she did not disqualify herself. She also asked questions at the public hearing and made comments at the executive session.
The plaintiff relies upon 8-11 of the General Statutes which provides in part that "no member of any zoning commission . . . or board and no member any zoning board of appeals shall participate in the hearing or decision of the board or commission of which he is a member upon any matter in which he is directly or indirectly interested in a personal or financial sense." There is no claim that Mrs. Rea had a financial interest in the application or the Commission's decision on the application. Disqualification is required only if the record shows a sufficient direct or indirect personal interest in the project before the commission. Whether a conflict of interest exists is largely a question of fact and depends upon the circumstances of each case. Armstrong v. Zoning Board of Appeals, 158 Conn. 158, 171; Petrowski v. Norwich Free Academy,199 Conn. 231, 242. A personal interest is defined in Anderson v. Zoning Commission, 157 Conn. 285, 290, 291 as follows:
 "A personal interest is either interest in the subject or a relationship with the parties before the zoning authority impairing the impartiality expected to characterize each member of the zoning authority. A personal interest can take the form of favoritism toward one party or hostility toward the opposing party; it 18 personal bias or prejudice which imperils the open-mindedness and sense of fairness which a zoning official in our state is required to possess."
However, as noted in several cases, local governments would be seriously handicapped if any conceivable interest, no matter how remote and speculative, would require the disqualification of zoning officials. Id., 291; Armstrong v. Zoning Board of Appeals, supra , 171; Petrowski v. Norwich Free Academy, supra 242. The application here involved the town's property, and there is no indication that Carla Rea had any interest other than representing the public interest in voting for the application. The cases finding conflict of interest based upon a relationship between a commission member and a relative involve situations where the relative was either an applicant, CT Page 8383 owned property in the vicinity of the land involved in the application, or there was an interest which might confer a personal or financial benefit upon the relative. None of those situations exist here.
The next claim is that the failure to have the conditions imposed on approval of the application available for inspection at the Commission's office as stated in the legal notice invalidates the approval. The appellant contends that where the agency fails to list the conditions in the legal notice itself, but references interested parties to a municipal office to review a document containing the conditions, that the document must be there for public inspection throughout the entire 15 day appeal period. The post hearing notice of any agency's decision must be adequate to allow a reader to form an opinion as to whether the decision referred to presents an appealable issue, which is determined from the notice as a whole, and the notice must allow a reasonable opportunity to obtain the information required to decide whether to appeal where the notice refers to other sources. Bridgeport Bowl-O-Rama Inc. v. Zoning Board of Appeals, 195 Conn. 276, 282. The legal notice published November 4, 1992 was not misleading. It indicated approval of the application with conditions and stated that the conditions are on file with the Commission's office at the Westport Town Hall. Cases on the prehearing legal notice hold that it is adequate when the notice refers to documents and maps on file with the Town Hall. R. B. Kent Son Inc. v. Planning Commission, 21 Conn. App. 370, 378; Passaro v. Zoning Commission, 155 Conn. 511, 514, 515; Lavitt v. Pierre, 152 Conn. 66,73. The same concept should apply to post-hearing notice of a decision. "It is not essential that a notice of decision expressly state every consideration that might be relevant to any party who might want to appeal the board's decision. It is only necessary to provide notice adequate to ensure a reasonable opportunity within the applicable time constraints to obtain the information required to form an opinion whether or not to appeal." Bridgeport Bowl-O-Rama, Inc. v. Zoning Board of Appeals, supra, 282.
In this case a legal representative of the plaintiff went to the Commission's office on November 4, 1992 the date the legal notice was published, at about 11:00 A.M. to ascertain the conditions attached to approval of the application. A staff employee informed her that the conditions were in draft form, that giving out a copy of the draft was not allowed, and that CT Page 8384 the final form of the conditions would be ready in a day or two, namely on November 5th or 6th. The draft of the conditions was on the desk of the Director of the Commission who was not in the office at that time. The final, official statement of conditions was completed by the director late in the afternoon of November 4, 1992, and was available for public inspection on November 5th.
In the Carnese case an employee of the law firm which represented the plaintiff was unable to obtain a copy of the conditions when he requested it on November 5, 1992, but the court found that the list of conditions was available in the commission's office and would have been available that day. (Except for the Carnese case decision there is apparently no case which decides whether or not the decision is invalidated because the conditions referred to in the legal notice are not available throughout the 15 day appeal period.) There Judge Levin concluded that the plaintiff and the public had a reasonable opportunity within the time limits for an appeal to obtain the information required to form an opinion whether or not to appeal.
This case presents a similar factual scenario. There is no evidence here that anyone else went to the Commission's office on November 4th or 5th to examine the conditions of approval, that they were then unable to determine what they were, and as a result failed to take an appeal within the 15 day's time limit in8-8(b) of the General Statutes. The legal notice was not misleading; the conditions of approval were not ready for inspection on the date of publication of the notice and part of the following day. The plaintiff was not prejudiced since her appeal was taken within the 15 day time limit. There are no other appeals from this decision, and no evidence that anyone was precluded from appealing because of the delay in getting the conditions ready for public inspection. While the Commission pursues a dangerous course in failing to have the conditions of approval ready for public inspection as stated in the legal notice, this is not the appropriate case to set the point at which a potential appellant does not have a reasonable opportunity to obtain the necessary information and take a timely appeal. Moreover, this situation is different from cases where the Commission failed to publish a legal notice within the statutory time limits or where the legal notice was misleading, which are situations where personal knowledge of the appellant does not avoid the problem that other, unidentified members of CT Page 8385 the public may have been misled by the defective notice. [See Schwartz v. Hamden, 168 Conn. 8, 15, holding that attendance at a public hearing does not preclude challenging the legal notice of the hearing for failure to comply with statutory publication requirements, but attendance at the hearing is a waiver of a defect in personal notice].
The final claim is that the special permit and site plan were illegally granted in that the final conditions of approval were altered and expanded after the Commission made its decision, which was an action beyond the jurisdiction of the Commission or its agents. In reviewing a similar claim in the Carnese case, Judge Levin concluded that the Commission illegally added additional conditions to approval of a similar special permit and site plan, but the additional conditions were void and of no effect, and the special permit and site plan, together with the conditions properly imposed by the Commission at its executive session were allowed to stand. While a similar situation exists here, there is no indication that there was evidence at the trial of the Carnese case on this issue, and the opinion does not consider whether and to what extent the illegal conditions can be severed from the final approval. This requires consideration of the resolution passed by the Commission, the post-decision additions to the conditions made by the Planning Zoning Director and the Commission chairman, the terms of the final resolution, and the Westport Zoning Regulations.
The resolution passed by the Commission on the site plan and special permit at the executive session of October 28, 1992 was to grant application 92-146 as presented with a revised site plan to be submitted, no band practice, no lights and loud speakers, no cutoff of play before sundown, all parking currently on the plan to be eliminated, emergency-access to be provided, a barrier between existing parking in the fields, emergency telephone service, and a landscape committee to conduct field inspections. See Exhibit 9, page 14. While the defendant argues that these are summary minutes rather than a verbatim transcript, the minutes are detailed and do not contain some of the conditions that appear in the final resolution filed in the Planning and Zoning office and referred to in the legal notice. Not only are some of the additional conditions not referred to in the resolution, but the minutes do not even show that they were discussed by the commissioners. Instead of using the resolution passed by the Commission, Katherine Barnard, the CT Page 8386 Planning and Zoning Director, prepared a draft of a resolution, which was not complete on November 4th, although the legal notice stated that the conditions attached to the special permit and site plan were on file with the Commission's office. Barnard showed her draft resolution to the Commission chairman who approved them on November 4th or 5th. The notice sent to the town's agent on November 5, 1992 signed by the chairman had eleven conditions of approval, with condition seven containing subsections a through h. This was a significant expansion of the nine conditions in the original resolution.
There was no problem with cleaning up or rephrasing the Commission's resolution since, as noted in Couch v. Zoning Commission, 141 Conn. 349, 348, "it must be borne in mind, however, that we are dealing with a group of laymen who may not always express themselves with the nicety of a Philadelphia lawyer. Courts must be scrupulous not to hamper the legitimate activities of civic administrative boards by indulging in a microscopic search for technical infirmities in their actions." Conditions 1 through 5 and 7(a) through 7(d) inclusive amount to a rephrasing of the nine conditions adopted by the commission. Conditions 6[,] 8, 9, 10 and 11 and condition 7 subsections (e) through (h) were not discussed by the Commission and were not part of its resolution on October 28, 1992. They are as follows:
 "6. Organized use shall be limited to teams fielded by Westport organizations and their opponents. Fields may not be made available to out-of-town teams for practice except where a reciprocal agreement exists.
 7.(e) The drainage plans shall be signed and sealed by a license professional engineer and approved by the Town Engineer.
 (f) All new utilities shall be placed underground.
 (g) The final grading plan shall be approved by the Town Engineer.
(h) A sedimentation and erosion CT Page 8387 control plan shall be approved by the Conservation Commission Director.
 8. And "as — built" shall be submitted prior to an issuance of a certificate of zoning compliance.
 9. A zoning permit shall be obtained within one year of this approval or said approval shall become null and void.
 10. All work approved pursuant to this site plan/special permit shall be completed within 5 years of date of approval.
 11. This is a conditional approval. Each and every condition is integral part of the Commission decision. Should any of the conditions, on appeal from this decision, be found to be void or of no legal effect then this conditional approval is likewise void. The applicant may refile another application for review." Exhibit 10.
There is no evidence that the Commission as a whole approved these additional conditions. Even if it legally could do so, the Commission never reconvened to reconsider the application after its vote of October 28, 1992. Once the commission voted on the application and published a legal notice of its decision, it completed its duties under 8-3(c)(b) of the General Statutes. That statute provides in part as follows:
 "Whenever a commission grants or denies a special permit or special exception it shall state upon its records the reason for its decision. Notice of the decision of the commission shall be published in a newspaper having a substantial circulation in the municipality and addressed by certified mail to the person who requested or applied for a special permit . . . within fifteen days after such decision has been rendered."
CT Page 8388
The Commission's records do not reflect approval of the additional conditions. The Commission's records, including its minutes, are controlling. Northrop v. Waterbury, 81 Conn. 305,309. A valid vote of a multi-member agency can occur only when the agency members are present and convened together at a public meeting. Pepe v. City of New Britain, 203 Conn. 281, 290. A quorum, or a majority of all the members of the municipal agency is the minimum number of members required to be present for it to transact business, unless a different is expressly required by statute or charter provision. Elections Review Commission of Eighth Utilities District v. Freedom of Information Commission,219 Conn. 685, 696 n. 12; Ghent v. Zoning Commission, 220 Conn. 584,598.
Apparently the Commission has authorized the Director and the Commission chairman to prepare final resolutions and conditions of approval beyond those actually voted on by the Commission, and without further review by the Commission. The additional conditions were not properly adopted and are illegal, but they were made the official conditions of the Commission when they were filed in the Planning and Zoning office. Without this appeal the conditions would stand even though they exceeded the restrictions placed on the special permit and site plan by the Commission itself.
This court parts company with Carnese v. Planning and Zoning Commission of Westport on this point. These additional conditions are significant, not trivial. Condition 11, quoted above, states that all of the conditions are an integral part of the Commission's decision and if that any of them are void or of no legal effect then the conditional approval of the special permit and site plan is void. Where illegal conditions are attached to a special permit, the question on appeal is whether an illegal condition is severable from the permit. In Parish of St. Andrew's Protestant Episcopal Church v. Zoning Board of Appeals, 155 Conn. 350, 354, 355 and Beckish v. Planning and Zoning Commission, 162 Conn. 11, 19, an illegal condition was severable from the special permit, but in Hochberg v. Zoning Commission, 24 Conn. App. 526, 529 the special permit could not be issued because the illegal conditions were an integral part of the approval. See also Vaszauskas v. Zoning Board of Appeals, 215 Conn. 58, 66, (illegal condition attached to a variance which required a temporary soil extraction permit to be obtained from the planning commission was not severable and CT Page 8389 precluded the variance). The question of severability is a question of intent of the agency, which is a judicial question for the court. Burton v. City of Hartford, 144, Conn. 80, 89, 90; Amsel v. Brooks, 141 Conn. 288, 300, 301. A commission can provide for separability in its zoning regulations to replace a presumption that the components of its decision are indivisible. Langer v. Planning Zoning Commission, 163 Conn. 453, 459. However, the defendant has done the opposite. Section 43-7.6 of the Zoning Regulations on conditions of approval for a special permit reads as follows:
 "When the commission grants a special permit or approves a site plan with conditions, each and all the conditions shall be an integral part of the commission's decision. Should any of the conditions on appeal from such decision be found to be void or no legal effect, then the conditional approval is likewise void. The applicant may refile another application for review."
The conditions are not severable from the approval and the special permit and site plan, and the attachment of illegal conditions which are an integral part of the approval invalidates it.
The appeal is sustained.
ROBERT A. FULLER, JUDGE