[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal by the plaintiff from a decision by the Statewide Grievance Committee reprimanding the plaintiff for violating Rules 1.3 and 1.4 of the Rules of Professional Conduct.
The facts are as follows. Plaintiff was retained by Michael Csanadi to pursue an employment discrimination claim against Burt's Beverage through the Commission on Human Rights and Opportunities and to the Superior Court. The plaintiff was paid a retainer of $5,000. When the case came to a pretrial in the Superior Court, the judge recommended a settlement of $7,500. Mr. Csanadi refused to accept that sum but did authorize the plaintiff to settle the case for $9,000. The plaintiff, continuing to negotiate with company attorney and after believing he had received an offer of settlement for $9,000, authorized his wife, practicing with him, to communicate with the company attorney and accept the offer. She left a phone message with the company attorney that Csanadi agreed to settle for the $9,000 amount. The next day, November 17, 1995, plaintiff withdrew the case. Several days later differences arose between the attorneys, the company attorney finally indicating to the plaintiff that the most his client would offer was $5,000. The plaintiff never wrote to the company attorney to memorialize in writing the agreement allegedly reached, did not move to reopen the case, and did not carry out his plan to sue on the oral agreement of settlement. In fact he did nothing further on the matter, nor did he tell his client of the situation. Mr. Csanadi called the plaintiff a number of times but never was able to reach him. Finally, the plaintiff having heard that Mr. Csanadi was telling people that a settlement had been reached on his case and the plaintiff had not paid him his share of the settlement, wrote to Mr. Csanadi on May 23, 1996 to the effect that he had received no money on the case because "the lawyer on the other side appears to be reneging on the settlement." He further stated that Mr. Csanadi's options were to refile the case and demand sanctions from the judge, or to sue the lawyer himself for breach of agreement. Mr. Csanadi hired another lawyer who in 1997 sought to reopen the case, but the motion was denied as untimely. That lawyer refused to follow the plaintiffs advice to sue the company attorney for breach of the settlement agreement. On May 4, 1998, Mr. Csanadi filed a complaint with the Statewide Bar Council. That council assigned the matter to the Danbury Grievance Panel for determination of CT Page 9179 probable cause.
Counsel for the Danbury Grievance Panel was Gail S. Kotowski. The Danbury Grievance Panel reviewed the allegations of the complaint and without a hearing concluded that there was probable cause of an ethical violation of the following provisions of the Rules of Professional Conduct: Rule 103 and 104(a) and (b).
The plaintiff was informed that the file had been forwarded to a review panel of the Statewide Grievance Committee for its determination and review.
On October 7, 1998, plaintiff moved to dismiss and set aside the finding of probable cause on the ground that the ruling was made without jurisdiction due to the need for Attorney Kotowski to recuse herself. Plaintiff alleged he had sued her personally and as head of a country day school in Guilford on behalf of another client, the parent of a child in the school. At the hearing before the review panel on October 7, 1998 plaintiff renewed the motion. The panel recessed to deliberate on the motion and determined to deny it.
At the hearing Mr. Csanadi testified that he did not learn that the plaintiff had withdrawn his case against Burt's Beverage Inc. until he received the plaintiffs letter of May 23, 1996 more than six months after that withdrawal. He further testified that he had sought repeatedly to contact the plaintiff and the plaintiff had not responded to his telephone calls.
Plaintiffs testimony was at best equivocal on whether or not he notified Mr. Csanadi of the failure of the settlement arrangements and of the plaintiffs plan to sue on the oral settlement agreement.
The review panel found that the plaintiff "did not timely and thoroughly advise the complainant of the withdrawal of the action and the full range of options available to the complainant, so the complainant could make a reasonable judgement on which course to pursue . . . We find that the [plaintiff] in violation of Rule 1.4(a) and (b) of the Rules of Professional Conduct, failed to adequately and timely communicate with the complainant about the specifics of the settlement problem and the withdrawal of the civil action and the complainant's options, given the situation." The Committee further found that plaintiff neglected the complainant's interest after he learned that the company attorney was not going to forward the $9,000 sum and that the plaintiff "essentially abandoned the complainant's matter." As a consequence it concluded the plaintiff also violated Rule 1.3 of the Rules of Professional Conduct. Its determination was to reprimand the plaintiff for a violation of Rule 1.3 CT Page 9180 and 1.4(a) and (b) of the Rules of Professional Conduct.
The plaintiff filed objections to the recommended ruling of the review panel. On July 16, 1999 the Statewide Grievance Committee reviewed the record and at its meeting held on July 15, 1999 affirmed the decision of the panel in all respects, concluding that the panel's findings were supported by the record and that there was clear and convincing evidence of a violation of Rule 1.4 and Rule 1.3 of the Rules of Professional Conduct. The Statewide Grievance Committee also concluded that the reviewing panel's decision denying plaintiffs motion to dismiss, based on the alleged bias of Attorney Kotowski, was correct because Kotowski was solely counsel to the local grievance panel.
The plaintiff is statutorily aggrieved and clearly has standing to bring this appeal.
The standard of review of a decision of a Statewide Grievance Committee issuing a reprimand is limited to reviewing the record to determine whether the facts found are supported by the evidence contained within the record, and whether the conclusions made are legally and logically correct. In addition, in a grievance proceeding, the standard of proof applicable to determining whether an attorney has violated the rules of professional conduct is clear and convincing evidence. The burden is on the Statewide Grievance Committee to establish that the occurrence of an ethics violation by clear and convincing proof. Somers v. Statewide Grievance Committee, 245 Conn. 277, 290 (1998); Lewis v. Statewide Grievance Committee, 235 Conn. 693, 698 (1996). The court shall not substitute its judgement for that of the Statewide Grievance Committee as to the weight of the evidence on questions of fact. Connecticut Practice Book § 2-38(f). The court must affirm the decision of the committee unless it finds the decision is "(1) in violation of constitutional [sic], rules of practice or statutory provisions; (2) in excess of the authority of the committee; (3) made upon unlawful procedure; (4) affected by other errors of law; (5) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; (6) or arbitrary, capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion". Id.
The plaintiff appealed to this court essentially on two grounds: (1) there was not clear and convincing evidence in the record to sustain the Committee's determination; (2) the finding of probable cause by the local grievance panel was void and due process was denied plaintiff due to the fact that the counsel for the local panel had a conflict and the Committee failed to apply a judicial, as opposed to an administrative, standard of recusal in this case. This court finds no merit to either of those grounds. CT Page 9181
The Committee found that the plaintiff had violated Rule 1.4(a) and (b) of the Rules of Professional Conduct. Rule 1.4(a) provides "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information." Rule 1.4(b) provides "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." The commentary under this rule is that the client should have sufficient information to participate intelligently in decisions concerning the objectives of the representation and means by which they are to be pursued, to the extent the client is willing and able to do so. The commentary further refers to the obligation of the lawyer to keep the client informed as to settlement negotiations.
In this case, the Committee found that the plaintiff did not timely and thoroughly advise the complainant Csanadi of the withdrawal of the action and the full range of options available to Csanadi so that he could make a reasonable judgment on which course to pursue. Specifically it found that the plaintiff failed to communicate with Csanadi about the specifics of the settlement problem and the withdrawal of the civil action. Those findings are supported by the evidence in this case. The plaintiff knew within a day or two after his withdrawal of the action that the company attorney was not agreeing to an offer of settlement of $9,000. The plaintiff did not inform the client of that until six months later and even then was ambiguous about that information. His letter of May 23, 1996 to his client says "The lawyer on the other side appears to be reneging on the settlement agreement." The plaintiff did not tell his client that he had withdrawn his lawsuit in the Superior Court at the time he did it, and not until six months later.
Mr. Csanadi testified that he had not been informed of either the withdrawal of the action or the difficulty regarding the settlement acceptance during that entire six month period. He testified that he did not know what was happening and that he had repeatedly called the plaintiffs office and had gotten no information at all. The plaintiff did not specifically testify that he had informed his client of the facts regarding the failed settlement negotiations or the withdrawal of action until the May 23, 1996 letter.
The Committee had the right to assess the credibility of the witnesses and give the weight they found appropriate to the evidence. This court finds there was clear and convincing evidence to support the Committee's finding that the plaintiff failed adequately and timely to communicate with Csanadi about the settlement problem and the withdrawal of the action. This became the basis for the Committee's determination of a violation of Rule 1.4(a) and (b) of the Rules of Professional Conduct. CT Page 9182 The court finds it is based upon the record and the court finds no error in its conclusion.
Rule 1.3 provides, "A lawyer shall act with reasonable diligence and promptness in representing a client." The Committee found that the plaintiff essentially abandoned Csanadi's matter after the failure of the settlement negotiations and while he continued to represent him. Though his plan was to sue on the oral contract of settlement, he did nothing about it for those six months. The finding of the Committee is supported by the clear and convincing evidence in the record. The court finds no error in its determination that the plaintiff violated Rule 1.3 of the Rules of Professional Conduct.
Plaintiff further claims that the Statewide Grievance Committee erred in acting upon the finding of probable cause by the Danbury Grievance Panel when Gail Kotowski was its counsel and she had been sued by the plaintiff in a separate action and, therefore, there was a conflict of interest and the appearance of impropriety. The essence of his claim is that because counsel for local grievance panels are appointed by the judges of the Superior Court (C.G.S. § 51-90d), they are judicial officers and a judicial standard for recusal should be applied rather than the standard for recusal of an administrative agency.
The facts supporting this claim are that Gail Kotowski, personally and as chairman of a day school in Guilford, Connecticut was sued by plaintiffs client, a parent of a child in the school. The case was settled before this case arose. No evidence was presented as to whether or not Ms. Kotowski suffered any financial loss as a consequence of the suit, or whether or not she evinced any bias against plaintiff in her role as counsel to the Danbury Grievance Panel,
At the outset this court notes that plaintiff cites no cases to the effect that an official appointed by Superior Court judges is subject to the same rules of disqualification as judges, and this court believes no such case exists. Secondly, it may be noted that Attorney Kotowski wascounsel to the Danbury Grievance Panel and not a member of the panel itself. The counsel of a panel is clearly subject to a lower standard of disqualification than panel members themselves. Our Supreme Court has clearly ruled that administrative adjudicators performing quasi-judicial functions are not held to judicial standards of conduct. In Petrowski v.Norwich Free Academy, 199 Conn. 231 (1986) members of the board of trustees of the Norwich Free Academy, who were also members of a law firm representing the academy, participated in a decision terminating the tenure of a teacher. The trial court dismissed the administrative appeal of the teacher. The Appellate court reversed on the grounds that "had two lawyer members of the board been judges participating in a judicial CT Page 9183 proceeding, they would have been disqualified, because the relationship between their law firm and the academy would have violated the governing standards for judicial disqualification, which is the reasonable appearance of impropriety." Petrowski v. Norwich Free Academy,2 Conn. App. 551, 566 (1984). The Supreme Court reversed the Appellate Court, holding,
 "The applicable due process standards for disqualification of administrative adjudicators do not rise to the heights of those prescribed for judicial disqualification . . . The canons of judicial ethics go far toward cloistering those who become judges, the ultimate arbiters of constitutional and statutory rights, from all extraneous influence that could even remotely be deemed to affect their decision. Such a rarified atmosphere of impartiality cannot be practically be achieved where the persons acting as administrative adjudicators, whose decisions are normally subject to judicial review, often have other employment or associations in the community they serve. It would be difficult to find competent people willing to serve, commonly without recompense, upon the numerous boards and commissions in this state if any connection with such agencies, however remotely related to the matters they are called upon to decide, were deemed to disqualify them." 199 Conn. at 238.
See also Jutkowitz v. Department of Health Services, 220 Conn. 86, 99-101
(1991); Transportation General Inc. v. Department of Insurance,236 Conn. 75, 76 (1996).
The courts recognize the presumption that administrators serving as adjudicators are unbiased. That presumption can be rebutted by a showing of conflict of interest but the burden of establishing a disqualifying interest rests on the party making the contention. Petrowski v. NorwichFree Academy, supra at 236. The plaintiff has failed to show any actual bias by Attorney Kotowski against the plaintiff in Kotowski's role as counsel for the Danbury Grievance Panel.
The appeal is dismissed.
Robert Satter, Judge Trial Referee