TRANSPORTATION GENERAL, INC. *v.* INSURANCE DEPARTMENT OF THE STATE OF CONNECTICUT ET AL.
(12944)

O'CONNELL, FOTI and LAVERY, Js.

Argued October 28, 1994—decision released January 17, 1995

---

[3] The plaintiffs failed to appear at oral argument.

*Richard P. Weinstein,* with whom, on the brief, was *Gail P. Ferris,* for the appellant (plaintiff).

*William J. Prensky,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellee (named defendant).

*Kathleen N. Dondero,* with whom, on the brief, was *Daniel L. FitzMaurice,* for the appellees (defendants New Hampshire Insurance Company et al.).

FOTI, J. The plaintiff, Transportation General, Inc., doing business as Metro Taxi, appeals from the judgment rendered by the trial court affirming the decision of the insurance commissioner who, in turn, had affirmed the decision of the Connecticut Automobile Insurance Assigned Risk Plan (CAIARP) canceling the commercial automobile liability insurance policy issued to the plaintiff by New Hampshire Insurance Company. On appeal, the plaintiff claims (1) that the trial court improperly applied a lower standard of conduct to administrative hearing officers than to judges and (2) that, even pursuant to the lower standard of conduct, there was sufficient evidence to show bias and prejudgment on the part of the insurance commissioner. We affirm the judgment of the trial court.

The following facts are relevant to this appeal. The plaintiff is a taxi cab company the vehicles of which were insured by New Hampshire Insurance Company,

through the CAIARP.[1] On October 16, 1991, New Hampshire Insurance Company issued a notice of cancellation of the plaintiff's policy due to nonpayment of premiums.[2] After receiving the notice of cancellation, two principals of the plaintiff taxi cab company, along with their attorney, met with the insurance commissioner. The purpose of this meeting, which took place on October 30, 1991, was to work out a temporary solution to prevent the cancellation of the plaintiff's insurance. The insurance commissioner recommended a settlement of the dispute between New Hampshire Insurance Company and the plaintiff over the amount of premium due. The proposal was not acceptable to the plaintiff and the meeting ended without an agreement.

On November 1, 1991, the plaintiff formally appealed the cancellation of its policy to the governing committee of the CAIARP. The committee affirmed the cancellation and the plaintiff appealed to the insurance com-

---

[1] The CAIARP is a residual market mechanism established by the state insurance commissioner pursuant to General Statutes § 38a-329 (a). This statute directs the commissioner to "establish and approve a reasonable plan . . . to provide insurance coverage for applicants for such property and casualty policies who are in good faith entitled to but unable to procure such policies through ordinary methods." Automobile insurance is covered under the CAIARP. See General Statutes §§ 38a-329 and 38a-337.

[2] The plaintiff's premium was experience rated. An experience rated premium has two components, the manual, or base, rate and the loss experience of the particular insured. The manual rates are based on the past history of all available claims for a particular type of risk. The frequency, variety and total dollar amount of claims are used by the CAIARP to develop a base rate. The base rate is filed with the state insurance commissioner pursuant to General Statutes § 38a-676 (a). The second component, losses actually experienced by the particular insured over a finite period, is composed of several elements in addition to the amount of claims paid. See General Statutes § 38a-686 (b) (1). An insured's loss experience is reduced to an experience rating modification factor. The modification factor is applied to the base rate to achieve the actual premium for the particular insured. See *Century Cab, Inc.* v. *Commissioner of Insurance*, 327 Mass. 652, 100 N.E.2d 481 (1951) (explaining experience rating under similar commercial insurance plan).

missioner pursuant to General Statutes § 38a-329 (a).[3] The issue raised by the plaintiff in this appeal was whether the CAIARP's sustaining of the cancellation of the plaintiff's policy was predicated on a validly calculated premium. An evidentiary hearing was conducted by the insurance commissioner and a decision was issued on June 17, 1992. The plaintiff had requested, at the opening of this hearing, that the commissioner recuse himself on the basis of his prior involvement in the case. He refused to do so. In his decision, the insurance commissioner sustained the cancellation of the plaintiff's insurance policy. In doing so, however, he made several modifications to the calculation of the plaintiff's premium, thereby benefiting the plaintiff by decreasing the amount owed.[4] Nevertheless, the insurance commissioner found that there was an annual premium in the amount of $613,200 due and unpaid, and that the cancellation was justified.

The plaintiff appealed the insurance commissioner's decision to the Superior Court. The sole basis of the plaintiff's appeal was that the insurance commissioner had denied the plaintiff a fair hearing because he had developed a bias against the plaintiff prior to the hearing. The plaintiff also alleged that the insurance commissioner had improperly received ex parte evidence in violation of General Statutes § 4-181. The trial court held an evidentiary hearing on the issues raised by the plaintiff's claim of bias. At this hearing, the plaintiff claimed that the insurance commissioner had displayed an appearance of bias at the October 30 meeting in that

[3] General Statutes § 38a-329 (a) provides in relevant part: "Any applicant for any such policy, any person insured under any such plan and any insurance carrier affected may appeal to the insurance commissioner from any ruling or decision of the . . . committee designated to operate such plan. . . ."

[4] The insurance commissioner found that a decreased modification factor should have been employed and that various losses should have been excluded from the premium calculation formula.

he had prejudged what the appropriate premium should be and, in subsequent correspondence, he displayed his anger that the plaintiff had refused to accept his recommendation. The plaintiff also alleged that the insurance commissioner had improperly relied on certain ex parte communications when making his final decision. The trial court found that "the commissioner was not biased against the plaintiff prior to the administrative hearing nor had he prejudged the issues to be considered there. . . . [F]urther . . . the ex parte communications received by the commissioner after the hearing did not prejudice the plaintiff." The trial court affirmed the decision of the insurance commissioner and dismissed the plaintiff's appeal. The plaintiff now appeals that judgment of dismissal.

I

The plaintiff first claims that the trial court's application of a lower standard of conduct to administrative hearing officers than to judges was improper. We disagree.

The trial court was asked to review the actions of an administrative hearing officer whom the plaintiff had accused of bias. The plaintiff argued that there were clear indications of bias and prejudgment on the part of the insurance commissioner. The trial court, after weighing all the evidence and determining the credibility of the witnesses, found that "the plaintiff has not sustained its burden of proving that, prior to the administrative hearing, the commissioner had become biased against it and had prejudged the factual issues which were to be considered at that hearing." The plaintiff argues that, in reaching this conclusion, the trial court improperly applied a lower standard of conduct to administrative hearing officers than to judges. The plaintiff argues that its due process rights under the Connecticut and United States

constitutions[5] are implicated in that due process requires an impartial decision maker for quasi-judicial, as well as for judicial, proceedings. *Simard* v. *Board of Education*, 473 F.2d 988, 993 (2d Cir. 1973). The plaintiff argues that the standard of impartiality should be at least as high, if not higher, for an administrative hearing officer as for a judge.

The canons of judicial ethics for disqualifying a judge for bias or prejudgment do not apply to administrative hearing officers. *Clisham* v. *Board of Police Commissioners*, 223 Conn. 354, 361, 613 A.2d 254 (1992); *Petrowski* v. *Norwich Free Academy*, 199 Conn. 231, 238, 506 A.2d 139, appeal dismissed, 479 U.S. 802, 107 S. Ct. 42, 93 L. Ed. 2d 5 (1986). " 'The mere appearance of bias that might disqualify a judge will not disqualify an arbitrator.' " *Rado* v. *Board of Education*, 216 Conn. 541, 556, 583 A.2d 102 (1990). The test for disqualification has been succinctly stated as being whether " ' "a disinterested observer may conclude that [the board] has in some measure adjudged the facts as well as the law of a particular case in advance of hearing it." ' " *Clisham* v. *Board of Police Commissioners*, supra, 362.

Attempting to overturn this line of authority, the plaintiff argues that the differing rules for judges and administrative hearing officers lack a rationale. A clear rationale, however, is that administrative agencies serve roles other than the purely adjudicatory function of the courts. An administrative official must be able to function in the community and to respond to problems under his or her aegis. *Petrowski* v. *Norwich Free Academy*, supra, 199 Conn. 237. Our Supreme Court has held that "[t]he applicable due process standards

---

[5] The plaintiff's claim arises under the fourteenth amendment to the United States constitution and article first, § 8, of the Connecticut constitution. The reach of the two is the same. See *Leib* v. *Board of Examiners for Nursing*, 177 Conn. 78, 81–82, 411 A.2d 42 (1979).

for disqualification of administrative adjudicators do not rise to the heights of those prescribed for judicial disqualification. . . . Such a rarefied atmosphere of impartiality cannot practically be achieved where the persons acting as administrative adjudicators, whose decisions are normally subject to judicial review, often have other employment or associations in the community they serve. . . . Neither the federal courts nor this court require a standard so difficult to implement as a prerequisite of due process of law for administrative adjudication." Id., 238.

While due process does require that a hearing officer be impartial and unbiased; id., 235; the standard for recusing an administrative hearing officer for bias is not identical to the high standard applicable to judges. The trial court correctly relied on the established standard governing the bias and recusal of administrative hearing officers when it found that the appearance of bias displayed by the commissioner did not so taint the process as to render it unconstitutional. Due process safeguards were afforded to the plaintiff in this case.

## II

Next, the plaintiff claims that even pursuant to a lower standard of conduct, there was sufficient evidence to show bias and prejudgment on the part of the insurance commissioner. The plaintiff claims that the trial court incorrectly found that it had failed to meet its burden of proving such bias and prejudgment. We disagree.

At the trial, the plaintiff presented evidence allegedly demonstrating the prejudgment and bias of the commissioner. First, the plaintiff alleged that certain comments made by the commissioner at the October 30 meeting demonstrated that he had formed an opinion about what was fair to the plaintiff long before the administrative hearing was held. It was alleged that

the commissioner stated that his interim proposal was the best deal the plaintiff could expect to get and there was nothing to gain from demanding a hearing. The trial court heard conflicting evidence on this point. The commissioner denied making such statements. Ultimately, the trial court believed the commissioner and made the following finding of fact. "The court does not find that the commissioner threatened the plaintiff by explicitly stating that the plaintiff would not obtain a lower rate than the settlement proposal even after a formal hearing."

The plaintiff also presented a letter written by the commissioner on November 18, 1991. The letter, which predated the plaintiff's appeal to the commissioner, was addressed to the plaintiff's counsel and discussed the plaintiff's rejection of the commissioner's solution to the pending cancellation of its insurance. The plaintiff alleged that specific phrases in the letter demonstrated that the commissioner was biased and had prejudged the merits of its case.[6] The trial court had the opportunity to evaluate the November 18 letter and to hear the commissioner's testimony. It held that "[a]lthough the commissioner obviously felt frustrated . . . at what he perceived as the plaintiff's 'irrationality' in rejecting his earlier proposal, the court finds that these feelings did not taint the fact finding process that the commissioner followed at the administrative hearing . . . ."

The plaintiff also relied on a letter that the commissioner received after the administrative hearing. This letter, from the underwriting manager of New Hampshire Insurance Company, contained New Hampshire's recalculation of the plaintiff's premium. The commis-

---

[6] The plaintiff focused on the following language in the November 18 letter: "Since your client's decision not to go along with the interim proposal seems so irrational, I can only infer that it couldn't fund the proposal . . . ."

sioner attached the letter to his decision. At trial, the plaintiff alleged that this was an ex parte communication, which the commissioner improperly relied on in formulating his final decision as to the amount of premium due. The plaintiff alleged that this reliance on the ex parte communication was prejudicial to the plaintiff and was evidence of the commissioner's bias. The trial court found that the letter was an ex parte communication under General Statutes § 4-181 (c)[7] and noted that whenever a violation of that statute is shown to have occurred, a presumption of prejudice arises, and the agency has the burden of disproving such prejudice. See *Henderson* v. *Dept. of Motor Vehicles*, 202 Conn. 453, 457–60, 521 A.2d 1040 (1987). The trial court heard testimony that the commissioner had already determined the correct modification factor on the basis of evidence adduced solely at the administrative hearing. Once that determination was made, the actual premium calculation, as was contained in the ex parte letter, was a routine arithmetic task, which involved no further judgment or discretion on the part of the commissioner. The court concluded that "the commissioner and the insurance department have sustained their burden of proving that the plaintiff was not prejudiced by the ex parte communication."[8]

There is no question that a petitioner before an administrative agency is entitled to have his petition heard and determined by an impartial and unbiased

[7] General Statutes § 4-181 (c) provides in part that "no party . . . in a contested case . . . shall communicate, directly or indirectly, in connection with any issue in that case, with a hearing officer or any member of the agency . . . without notice and opportunity for all parties to participate in the communication."

[8] The CAIARP and New Hampshire Insurance Company argue that the plaintiff has not challenged the trial court's ruling on the nonprejudicial effect of the ex parte communication. They argue that the plaintiff has abandoned this claim by not raising it on appeal. We find this argument to be without merit. The plaintiff has properly briefed this issue and provided us with a complete analysis for review.

agency. *Huck* v. *Inland Wetlands & Watercourses Agency*, 203 Conn. 525, 536, 525 A.2d 940 (1987). Connecticut law recognizes a presumption that agency administrators who serve as adjudicators are unbiased. *Clisham* v. *Board of Police Commissioners*, supra, 223 Conn. 362; *Petrowski* v. *Norwich Free Academy*, supra, 199 Conn. 236. This presumption can be rebutted by a showing of a conflict of interest, but the burden of establishing a disqualifying interest rests on the party making the contention. *Petrowski* v. *Norwich Free Academy*, supra, 236. The impermissible interest asserted must be realistic and more than remote. Id. "To overcome the presumption, the plaintiff . . . must demonstrate actual bias, rather than mere potential bias . . . unless the circumstances indicate a probability of such bias 'too high to be constitutionally tolerable.' " *Rado* v. *Board of Education*, supra, 216 Conn. 556.

To prove bias as a ground for disqualification of the hearing officer, the moving party must show more than an adjudicator's announced position about law or policy. *Clisham* v. *Board of Police Commissioners*, supra, 223 Conn. 362. The showing must disclose that the adjudicator has prejudged facts that are in dispute. Id.

Our Supreme Court has stated that "[w]hether an interest justifies disqualification is necessarily a factual question and depends upon the circumstances of the particular case. *Armstrong* v. *Zoning Board of Appeals*, 158 Conn. 158, 171–72, 257 A.2d 799 (1969)." *Petrowski* v. *Norwich Free Academy*, supra, 199 Conn. 242. After hearing the evidence, it is for the trier of fact, not an appellate court, to sift and weigh the evidence. *State* v. *Jones*, 22 Conn. App. 665, 668, 578 A.2d 667 (1990). A determination by the trial court that the evidence produced by the party claiming actual bias does not establish such bias "cannot be overturned, unless the subordinate facts found or the admitted or

undisputed facts would require a different conclusion as a matter of law." *Rado* v. *Board of Education*, supra, 216 Conn. 561.

Where the factual basis of the trial court's decision is challenged, an appellate court must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and pleadings in the whole record, those facts are clearly erroneous. *Season-All Industries, Inc.* v. *R. J. Grosso, Inc.*, 213 Conn. 486, 498, 569 A.2d 32 (1990); *Fortier* v. *Newington Group, Inc.*, 30 Conn. App. 505, 509, 620 A.2d 1321, cert. denied, 225 Conn. 922, 625 A.2d 823 (1993).

On the basis of our review of the entire record, we conclude that the trial court's finding that the plaintiff had not sustained its burden of proving bias was not clearly erroneous. The trial court allowed the plaintiff to introduce evidence in support of the allegations of bias and prejudgment. After hearing that evidence, the court came to the "factual conclusion" that the commissioner's interests did not justify disqualification. There was ample evidence before the trial court to support its finding. Deference to the trial court's factfinding is especially appropriate in this case, where the dispute involved the assessment of the credibility of the witnesses.

The judgment is affirmed.

In this opinion the other judges concurred.