[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs are the common council of the city of Middletown and the so-called "Ad Hoc Committee of the Middletown Common Council." They appeal the decision of the defendant freedom of information commission, acting on a complaint brought by defendant Sydney A. Libby, holding that the council violated General Statutes §1-21(a) by conducting a meeting not open to the public. The plaintiffs appeal pursuant to General Statutes § 4-183. CT Page 1267-JJ The court finds the issues in favor of the defendants.
On January 20, 1994, the council conducted a public meeting to consider the report of the city's charter revision commission and make recommendations to the commission concerning changes to the report. This procedure was to be a prelude to the ultimate submission of proposed charter amendments to the voters at a referendum. At some point during the meeting, the council declared a recess, which lasted about an hour and a half. During that recess, five members of the council met in private to discuss a package of fifteen proposed changes to the report that had been agreed upon at an earlier caucus of the Democrat majority on the council. The five council members who met during the recess included the deputy mayor, the Democrat and Republican party leaders on the council, and two other council members, a Democrat and a Republican. These five council members have been informally designated in the freedom of information commission proceedings and in the appeal to this court as the "ad hoc committee."
When the public meeting of the council reconvened, the members debated one of the proposed charter changes for a while and then unanimously adopted the Democrats' package of fifteen proposed changes for referral to the charter commission.
On February 9, 1994, defendant Libby filed a complaint with the defendant freedom of information commission claiming that the private meeting of the five council members violated the open meeting provisions of General Statutes § 1-21(a). The commission scheduled a hearing on the complaint and designated the "Ad Hoc Committee of the Middletown Common Council," as named in Libby's complaint, as the party respondent.
The hearing was held on June 3, 1994, before Commissioner Joan M. Fitch. Libby appeared, represented by counsel. The "ad hoc committee" appeared, represented by the Middletown city attorney.
Following the June 3, 1994, hearing, Commissioner Fitch rendered a proposed decision. She determined that the plaintiff Middletown Common Council had violated § CT Page 1267-KK1-21(a) as alleged by Libby. On August 10, 1994, the full commission met to consider that proposed decision. At that commission meeting, the council objected to the proposed decision on procedural grounds. The council argued in essence that only the "ad hoc committee" was the designated party respondent and that the council had never been properly made a party to the proceeding.
After considerable discussion, the commission tabled action on Commissioner Fitch's proposed decision. Subsequently, on August 29, 1994, the commission sent notice that the "matter has been reopened" and announcing a new hearing on October 11, 1994, before Commissioner Milton Sorokin. In the notice, the commission named the council as a party respondent as well as the "ad hoc committee."
The council, through its attorney, replied to the notice, requesting some clarification as to the scope of the new hearing, but raised no objection to its inclusion as a party to the proceedings. At the beginning of the October 11, 1994, hearing, the attorney for the commission stated that the council is "newly named (as a party) for purposes of the reopened hearing." The council did not object to that designation at that time.
Thereafter, the council fully participated in the proceeding as a party, presenting witnesses, other evidence, oral argument and written briefs.
Following the October 11, 1994, hearing, Commissioner Sorokin rendered a proposed decision. Subsequently, on December 14, 1994, the full commission met to consider the proposed decision. The attorney for the council was present at the meeting of the commission and presented oral argument in opposition to the adoption of the proposed decision. The council did not, however, raise any objection or argument concerning the reopening of the hearing before Commissioner Sorokin or its inclusion as a party respondent.
The commission voted to adopt the proposed decision as its final decision. In that decision, the commission found that the five members of the council who met in private during the recess of the council's public meeting CT Page 1267-LL did not constitute an "ad hoc" committee of the council. It found, however, that the private meeting was "under the implied authority of the council" and that its purpose was "to discuss a matter over which the respondent council had supervision, control, jurisdiction or advisory power." Based on those findings, the commission concluded that the private meeting constituted a "proceeding" of the council, which made it a "meeting" within the meaning of General Statutes § 1-18a(b). The private meeting was, therefore, the council held, subject to the open meeting requirements of § 1-21(a). The commission did not impose any penalty, but it did order the council henceforth to comply strictly with the freedom of information laws. It is that final decision which is the subject of this appeal.
In its brief on appeal, the council advances four arguments, which the court addresses below.
Procedure
The council argues that the commission improperly designated it as a party after the conclusion of the hearing before Commissioner Fitch. Although the argument is not entirely clear, it appears that the council objects more to the timing of its inclusion in the proceeding than to the fact that the commission did include it as a party. The argument does not succeed on either basis, however.
Unquestionably, the council was at all times a proper party to the commission proceeding. General Statutes § 4-166(8) defines a "party" as one "whose legal rights, duties or privileges are required by statute to be determined by an agency proceeding and who is named or admitted as a party." Libby's complaint to the commission essentially required the commission to determine the council's legal duties under the freedom of information laws. The commission should have named the council as a party respondent in the proceeding at the very outset. Its failure to do so at that time was an error of procedure, but it was no error that the council was ultimately made a party.
Although the commission was at fault in delaying the CT Page 1267-MM inclusion of the council in its proceeding on Libby's complaint, that is not sufficient grounds for overturning the commission's decision.
It is fundamental that a party must demonstrate that some prejudice resulted from the procedural flaw. General Statutes § 4-183(j) provides, in part, that "(t)he court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealinghave been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . (3) made upon unlawful procedure [or] . . . (4) affected by other error of law. . . ." (Emphasis added.) In order for a procedural deficiency to be the basis for reversing an agency decision, the person affected must show that he "suffer(ed) material prejudice as a result of (it)."Jutkowitz v. Department of Health Services, supra,220 Conn. 94.
In the present case, the council has advanced no convincing argument that it suffered any material prejudice as a result of the commission's delay in naming it as a party to the proceeding. It is undisputed that the commission conducted another full evidentiary hearing in addition to the Fitch hearing. It is also not disputed that, at the subsequent Sorokin hearing, the council was afforded all of the rights and privileges that it was due under the law. Specifically, the council was given the opportunity to present witnesses and other evidence and to present oral and written argument to the commission prior to the commission's rendering a final decision.
In summary, the council never demonstrated any material prejudice as a result of the procedure followed by the commission. Therefore, the court rejects the council's arguments concerning its designation as a party to the commission proceeding and the arguments concerning the reopening of the Fitch hearing and the designation of a new hearing officer to continue with it.
Bias or Prejudice of Hearing Officer
The plaintiff contends that certain remarks made by Commissioner Sorokin during a commission meeting and the hearing indicated that he had prejudged the case against CT Page 1267-NN the council.
There is a presumption that agency administrators who serve as adjudicators are unbiased. Clisham v. Boardof Police Commissioners, 223 Conn. 354, 362 (1992). This rule is in line with the more general presumption that public officials are presumed to have done their duty until the contrary appears. Leib v. Board of Examinersfor Nursing, 177 Conn. 78, 84 (1979). The burden of proof is, of course, on the person making the accusation and it is a heavy burden. The person must demonstrate either actual bias or the existence of circumstances indicating "a probability of such bias too high to be constitutionally tolerable." Rado v. Board of Education,216 Conn. 541, 556 (1990).
The canons of judicial ethics for disqualifying a judge for bias or prejudgment do not apply to administrative hearing officers. "The mere appearance of bias that might disqualify a judge will not disqualify an arbitrator." Transportation General, Inc. v. InsuranceDepartment, 36 Conn. App. 587, 592-593 (1995). The test for disqualification has been succinctly stated as being whether "a disinterested observer may conclude that (the administrative hearing officer) has in some measure adjudged the facts as well as the law of a particular case in advance of hearing it." Id.
In addition to substantive principles of administrative law concerning alleged bias or prejudice of an administrative hearing officer, the usual rules requiring timely action by the person making the allegations apply. "The failure to raise a claim of disqualification with reasonable promptness after learning the ground for such a claim ordinarily constitutes a waiver thereof." Henderson v. Department ofMotor Vehicles, 202 Conn. 453, 462 (1987).
The court has reviewed the entire record in this case, including particularly those portions of the transcript of the August 10, 1994 commission meeting cited by the plaintiff in its brief and the transcript of the reopened hearing at which Commissioner Sorokin presided. Based on this review, the court concludes that the council's claims are not supported by the record and, CT Page 1267-OO in any event, the council waived its right to request Commissioner Sorokin's recusal.
In its brief, the council argues that remarks made by Commissioner Sorokin at the August 10, 1994 commission demonstrated that he had at that time prejudged the case and was biased against the council's position. Nevertheless, when the council was later notified that the hearing would be reopened and that Commissioner Sorokin would be presiding, the council did not raise any objection. Indeed the attorney for the council, who had participated at the August 10 meeting, wrote the commission on August 31 specifically stating her "understanding that . . . Commissioner Sorokin has been selected to preside as the Hearing Officer."
When Commissioner Sorokin convened the reopened hearing on October 11, 1994, the same attorney representing the council appeared but did not object at that time to the commissioner's presiding.
Under the circumstances, the court holds that the council waived its right to object to Commissioner Sorokin's presiding as hearing officer at the October 11, 1994 proceeding and rendering a proposed decision thereafter. "We have made it clear that we will not permit parties to anticipate a favorable decision, reserving a right to impeach it or set it aside if it happens to be against them, for a cause which was well known to them before or during the trial." Henderson v.Department of Motor Vehicles, supra. In other words, no sandbagging allowed.
Even if the council had not waived its right to object to Commissioner Sorokin as the hearing officer in this case, the evidence in the record does not support the council's claim of bias. The original purpose of the commission meeting on August 10, 1994 was to consider whether to adopt the proposed decision rendered by Commissioner Fitch. There was vigorous discussion between the commissioners, the commission's executive director, commission counsel, and counsel for the parties, including plaintiff's counsel. The remarks of Commissioner Sorokin that were cited by the council as indicative of bias were made in that context. CT Page 1267-PP
As the August 10 meeting progressed, the transcript shows that the commissioners, especially Commissioner Sorokin, became less certain that the proposed decision should be adopted, indicating that they needed more time to consider the issues. Indeed, it was Commissioner Sorokin who finally moved to table the discussion. Although some of Commissioner Sorokin's remarks during the meeting were undeniably critical of the procedure that the council and the five member group had followed, they do not, in the context in which they were uttered, indicate that he had already prejudged the law and the facts against the council. Rather, there is some significant evidence tending to show that, in his mind, the issues were still very much in doubt. And when the reopened hearing commenced, Commissioner Sorokin was demonstrably willing to receive new evidence offered by the council for consideration by the commission before reaching its final decision.
Sufficiency of the Evidence
The council argues that the evidence in the record does not support the commission's factual finding that the council gave the five members of the so-called ad hoc committee the implied authority to meet privately to discuss the charter revisions.
With respect to this argument concerning the sufficiency of the evidence, the court must be guided by basic and familiar principles of administrative law, the first of which being that the scope of the court's review is extremely limited. General Statutes § 4-183(j) provides that "(t)he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact . . . The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record."
Our courts have repeated and elaborated on this "substantial evidence" rule so as to minimize the court's CT Page 1267-QQ role in reviewing an administrative agency's factual findings. "In challenging an administrative agency action, the plaintiff has the burden of proof. . . The plaintiff must do more than simply show that another decision maker, such as the trial court, might have reached a different conclusion. Rather than asking the reviewing court to retry the case de novo, . . . the plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision . . . The credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency . . . andevidence is sufficient to sustain an agency finding if itaffords a substantial basis of fact from which the factin issue can be reasonably inferred . . . The reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. (Citations omitted; internal quotation marks omitted; emphasis added.) Newtown v. Keeney, 234 Conn. 312,319-320 (1995), quoting Samperi v. Inlands Wetlands Agency,226 Conn. 579, 587-588 (1993).
In the present case, the council points to the testimony of various of its members that there was no explicit authorization given to the five members who met in private to do anything in behalf of the council as a whole. Therefore, the council argues, there was no substantial evidence to support the commission's findings in that regard. The argument is not persuasive.
The commission was entitled to weigh all of the evidence, including the circumstantial evidence, in arriving at its findings of fact. The undisputed and highly relevant circumstantial evidence was that the five members present at the private meeting were doing the council's business — that is, discussing the Democrats' proposed changes to the charter revision plan. Indeed, this took place during an interruption of a meeting of the whole council that had been called for the purpose of performing that specific business. There was testimony that one purpose of the private meeting was to "speed up debate" at the public meeting. When the five members CT Page 1267-RR returned, there were no objections or even questions from those who had not participated in the private meeting; rather, their own testimony suggests that they acquiesced in the procedure even though they had been excluded, in effect, from performing their official function.
Based on its review of the entire record in this case, the court finds that there is substantial evidence to support the factual findings of the commission as set forth in its final decision. Specifically, there was sufficient evidence to allow the commission reasonably to infer that the council had implicitly given the five members who met in private the authority to discuss the charter revision plan, a matter over which the council had supervision, control, jurisdiction or advisory power.
Definition of "Proceeding"
The plaintiff council contends that the commission misinterpreted the term "proceeding" as it is used in General Statutes § 1-18a(b). Specifically, the council argues that the private meeting of the five council members did not constitute a "proceeding" of the council because no votes or other actions were taken at the meeting. The council cites the decision of the Appellate Court in Emergency Medical Services Commission v. FreedomInformation Commission, 19 Conn. 352 (1989) in support of its argument.
The Emergency Medical Services Commission case is primarily important for its dicta that the presence of a quorum is not necessary in order for a meeting to constitute a "proceeding" within the meaning of the statute. The court reversed the commission's determination that the meeting in that case was a "proceeding," however, because the court found that "there was no evidence that any commission business was conducted at the (meeting)." (Emphasis added.) EmergencyMedical Services Commission, supra, 19 Conn. 356. But the case does not hold, contrary to the council's argument here, that those present at a meeting have to engage in some specified form of activity, such as voting, in order to bring their meeting within the definition.
In the present case, there was undisputed evidence CT Page 1267-SS that the five member group discussed the Democrats' proposed changes to the suggested charter revision and made some minor modifications. Section 1-18a(b) provides, in relevant part as follows:
 "Meeting" means any hearing or other proceeding of a public agency, any convening or assembly of a quorum of a multimember public agency, and any communication by or to a quorum of a multimember public agency, whether in person or by means of electronic equipment, to discuss or act upon a matter over which the public agency has supervision, control, jurisdiction or advisory power. "Meeting" shall not include . . . any chance meeting, or a social meeting neither planned nor intended for the purpose of discussing matters relating to official business.
(Emphasis added.)
The language of the statute thus plainly provides that a meeting of some of an agency's members may be a "proceeding" of the agency even if the only activity taking place is simply a discussion or a matter over which the agency has jurisdiction.
Even if the language of the statute's in need of interpretation on the point, the court must accord the commission's interpretation considerable deference. "Although the construction and interpretation of a statute is a question of law for the courts to decide . . . it is a well established practice of (the) court to accord great deference to the construction given (a) statute by the agency charged with its enforcement."Starr v. Commissioner of Environmental Protection,226 Conn. 358, 372 (1993). The Supreme Court has stated the same rule in a slightly different formulation in cases involving the commission's interpretation of statutes it is responsible for enforcing. Thus, in Cos Cob VolunteerFire Co. No. 1. Inc. v. Freedom of InformationCommission, 212 Conn. 100 (1989), cited by the defendant commission here, the court held "When the legislature uses a broad term . . . in an administrative context, without attempting to define that term, it evinces a CT Page 1267-TT legislative judgment that the agency should define the parameters of that term on a case-by-case basis." Id., 106.
In the court's view, the interpretation of §1-18a(b) given by the commission in this case is entirely reasonable. The critical factor in the commission's interpretation of the statute was its factual finding that the council, by implication, had authorized the five members to meet and discuss changes to the charter revision plan. When a public agency authorizes, either expressly or by implication, a group of its members to meet and discuss a subject that would ordinarily be discussed by the agency as a whole and when those members then meet for that purpose, it is reasonable to hold that they have engaged in a "proceeding of (the) public agency." To hold otherwise would be to permit any public agency to avoid the open meeting requirements of our law by the simple stratagem of authorizing a group of its members to do in private that which the law requires the agency to do in public. In this case, if the council had not enabled the five member group to discuss the charter revision in their private meeting, the council would presumably have had to conduct the discussion itself. In that event, there would be no question that such a council meeting would be subject to the open meeting requirements of § 1-21(a). The effect of the commission's interpretation is not to forbid the delegation of the council's work to a small group of its members; it is merely to hold that the small group is then subject to the same requirements of the freedom of information laws as the council itself would be. See, to the same effect,East Hartford Town Council v. Freedom of InformationCommission et al, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. CV 95 054 96 02 (January 24, 1996, Maloney, J.).
In summary, the court holds that the commission's interpretation of the term "proceeding" in the context of the facts of this case was completely reasonable. Furthermore, it is clearly in accord with the Supreme Court's repeated affirmation of the proposition that the law favors open government. "The overarching legislative policy of the FOIA is one that favors the open conduct of government and free access to public records . . . Our CT Page 1267-UU construction of the [FOIA] must be guided by the policy favoring disclosure and exceptions to disclosure must be narrowly construed . . . In light of these principles, thestatutory definition of public meetings contained in §1-18a(b) must be read to limit rather than to expand theopportunities for public agencies to hold closedhearings." (Citations and internal quotation marks omitted; emphasis added.) Glastonbury EducationAssociation v. Freedom of Information Commission,234 Conn. 704, 712-713 (1995).
The commission's decision is affirmed. The appeal is dismissed.
MALONEY, J.
EXHIBIT A
DOCKET NO. CV 95 0069035 S
RAYMOND HALL, : SUPERIOR COURT :
Plaintiff/Petitioner, : JUDICIAL DISTRICT OF LITCHFIELD : AT LITCHFIELD V. : :
BOARD OF FIREARMS PERMIT : EXAMINERS, : :
Defendants/Respondents. : JANUARY 12, 1995
AFFIDAVIT OF DALE C. MACLIN
The undersigned, being duly sworn hereby deposes and says:
1. I am above the age of eighteen, understand and believe in the obligation of an oath and have personal knowledge of the facts set forth herein.
2. I am employed as the Fiscal Administrative Officer with the State of Connecticut Board of Firearms Permit Examiners ("Board"). I have been employed by the Board for approximately thirteen years.
3. As the Fiscal Administrative Officer I am responsible CT Page 1267-VV for fiscal matters and I am responsible for processing appeals made to the Board. This includes handling the administrative matters with respect to the hearing sessions and Board deliberations. I am responsible for recording the minutes of the hearings and reducing the Board member votes to writing.
4. I am familiar with Mr. Hall's appeal to the Board through my duties as Fiscal Administrator for the Board.
5. After the Board members conduct a hearing on an appeal from the revocation of a pistol permit, they usually deliberate immediately after the hearing and render their votes on whether to uphold or overturn the revocation the same day.
6. Pursuant to the Freedom of Information Act, Conn. Gen. Stat. Sec. 1-21, I reduce the record of each Board member's vote to writing within forty-eight hours after they are cast. I then make the written record of the votes available for public inspection
7. However, it takes more time to type up the Board's written decision including its findings of fact and conclusions of law. I usually make the Board's written decision available within twenty days of the date the decision is made. I then mail a copy of the Board's written decision to the parties.
8. The Board deliberated and voted on Mr. Hall's appeal immediately after the hearing on June 21, 1995, at its regular session meeting.
9. I then made the written record of the votes on Mr. Hall's appeal available for public inspection the day after the vote, on June 22, 1995.
10. On June 22, 1995, Detective Michael Bochicchio of the State Police Special Licensing Firearms Unit, requested the information on the Board's vote on Mr. Hall's appeal. I provided him with this information on June 22, 1995.
11. On June 27, 1995, I received the State's motion for reconsideration and accompanying memorandum. I date stamped the memorandum when I received it. A true and correct copy of the date stamped memorandum is attached hereto.
12. The final written decision of the Board including its CT Page 1267-WW finding of facts and conclusions of law from the June 21, 1995 hearing was not available until July 5, 1995. On July 5, 1995, I mailed a certified copy of the decision to Mr. Hall.