[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal from all order of the defendant State Department of Social Services (hereinafter "DSS") suspending plaintiffs Barry W. Hultman and Dorothy Hultman from the Medicaid program and ordering restitution of DSS overpayments to the plaintiffs.
The facts are as follows. During the period from October 1, 1993 through September 30, 1995, Countryside Manor, Inc. (hereinafter "Countryside") was a longterm care facility in Bristol, Connecticut, furnishing goods and services to beneficiaries of the Medicaid program. During that period, plaintiff Dorothy Hultman was president of Countryside and Barry Hultman was the administrator of Countryside. Long-term care facilities participating in the Medicaid program file cost reports on an annual basis to allow DSS to determine their rate of Medicaid reimbursement. These cost reports are signed under oath by the owners and administrators of the facilities. Barry and Dorothy Hultman each signed under oath the 1994 and the 1995 cost reports submitted on behalf of Countryside to DSS. They each certified that they had read the reports and that the information was "true and correct" to the best of their knowledge "under the penalty of perjury". They also certified that all expenses presented in the reports, as a basis for securing reimbursement for Medicaid patients, were incurred to provide patient care at Countryside.
Union Tell, an accounting firm, prepared Countryside's 1994 and 1995 cost reports. On May 26, 1995 a representative of Union Tell wrote to Barry Hultman and notified him that Union Tell would not sign the 1994 cost report as preparer because Union Tell could not accurately determine from the records the allowable cost basis for purposes of the Medicaid CT Page 8555 rate computation. Thomas Demchak, an accountant at Union Tell, informed `DSS' Gary Richter of several concerns regarding the 1994 and 1995 cost reports. DSS has a contract with Ernst Young to audit the cost reports of its of longterm care facilities. In the case of the audit for the 1994 and 1995 cost reports filed by Countryside, Ernst Young, together with an accounts supervisor in the quality assurance unit of DSS, participated in the "agreed upon procedures review" of those reports. When the audit was completed Countryside was in bankruptcy. The Hultmans were no longer operating the facility. The bankruptcy court appointed a trustee and a receiver/manager as administrator. The trustee sent a preliminary draft of the audit report to the Hultmans outlining the proposed disallowances and a letter offering the Hultmans the opportunity to explain why these proposed disallowances should be reduced before finalizing the audit report. Barry Hultman responded that the audit report was not valid, but he did not agree to meet with DSS or discuss with DSS the draft audit report.
On April 4, 1997, DSS issued a notice of regulatory violations and proposed sanctions to the Hultmans. On April 17, 1997 the Hultmans filed an answer denying each allegation of the notice. Multi-day hearings were held in this matter in October, November and December 1997. The hearings were closed on December 3, 1997. The hearing officer filed a proposed final decision on November 25, 1998. The plaintiffs filed exceptions to the proposed decision. On December 31, 1998 DSS overruled the exceptions and adopted the hearing officer's proposed final decision as its final decision. The DSS ordered that Dorothy Hultman be suspended from the Medicaid program for a period often years and Barry Hultman be suspended from the Medicaid program for a period of twenty years, or upon full payment of restitution, which ever is longer. It also ordered that the Hultmans pay the amount of DSS overpayments as set forth in the schedules annexed to the notice of violations, reduced by an amount of payroll taxes paid to Internal Revenue Service by the bankruptcy trustee and $1,000 posted in error.
Plaintiffs' timely appealed that administrative decision and clearly has standing because they are statutorily aggrieved.
In its notice to the plaintiffs of regulatory violations, DSS specifically alleged plaintiffs: (1) knowingly and willfully made or caused to be made false statements, and false representations of material facts for the purpose of claiming payments for services provided to Medicaid beneficiaries by Countryside; (2) accepted payment for goods and services provided to Medicaid beneficiaries which exceeds the amount authorized by law for such goods and services; (3) failed to adhere to conditions established by law for Countryside's participation in the Medicaid program by engaging in practices that were inconsistent with CT Page 8556 sound fiscal and business practices, resulting in unnecessary, costs to the Medicaid program; (4) failed to comply with Medicaid provider agreement provisions regarding the maintenance of records; (5) failed to comply with applicable provisions of the provider agreement, regulations and statutes governing reimbursement for Medicaid costs.
At the hearings before the hearing officer the plaintiffs were represented by counsel and had the opportunity to cross examine the witnesses. The hearing officer made 96 specific findings of fact. They included that the plaintiffs failed to maintain time records for Countryside employees, the salaries and wages paid to these employees was not supported by documentation, and salaries paid to these employees, including Barry Hultman, were not related to patient care. Among the costs in the cost reports that were disallowed were expenses of a trip plaintiffs made to India, meals at Hooters, purchase of guns and ammunition, cost of supplies and materials for the plaintiffs' residence constructed at 82 Meadow Ridge in Avon, Connecticut. Also disallowed were accounts payable for longer than one year and expenses that exceeded the caps. The hearing officer also found that the testimony of Barry Hultman as to salaries that were self-disallowed by Countryside was not credible.
Based on these findings of fact, the hearing officer concluded that DSS presented substantial evidence that plaintiffs violated the state and federal Medicaid regulations and the Medicaid provider agreement by: (1) accepting reimbursement from the Medicaid program for costs that were never paid by them; (2) claiming costs in their 1994 and 1995 cost reports and accepting payments from Medicaid for these costs knowing they were not related to patient care; (3) failing to maintain documentation for expenditures and time records for persons to whom they paid salaries or wages; and (4) failing to keep records necessary to allow audits of Countryside's record. He further concluded that plaintiff knowingly and willfully made false representations in the 1994 and 1995 cost records for the purpose of claiming payments, thereby engaging in fraudulent acts. The hearing officer concluded that the plaintiffs' conduct violated § 17-83k-3 (1), (5), (8), and (9) of the Regulations of Connecticut State Agencies.[1] The hearing officer finally concluded that the disallowance of costs in schedules I and II of the notice of regulatory violations and proposed sanctions were based upon substantial evidence.
The recommended order of the hearing officer was that plaintiffs be required to reimburse DSS for overpayments as set forth in schedules I and II of the notice of violations, reduced by the amount of payroll taxes paid by the Internal Revenue Service by the bankruptcy trustee and $1,000 that was posted in error. The hearing officer further recommended that the Commissioner of Social Services suspend Dorothy Hultman and CT Page 8557 Barry Hultman from the Medicaid program as stated above.
The findings of fact and the proposed order of the hearing officer were adopted and approved by the Commissioner of DSS.
The plaintiffs assert the following grounds for appeal: (1) the hearing officer's findings of fact are based entirely on unreliable hearsay; (2) the conclusions of law of the decision do not logically or reasonably follow from the facts; (3) the order lacks adequate standards for the calculation of the overpayment by DSS to the plaintiffs, and the recommended suspension is over zealous; (4) the plaintiffs' constitutional right to due process was hindered due to the vast amount of pre-hearing and pre-decision publicity.
Initially it is important to state the standard of review for appeals from administrative agencies. Connecticut General Statutes § 4-183
(j) provides: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." The function of the trial court is not "to retry the case or to substitute its judgment for that of the administrative agency." Griffin Hospital v.Commissioner on Hospitals and Health Care, 200 Conn. 489, 496 (1986). Questions concerning the weight of the evidence and the credibility of witnesses are within the province of the agency. Leib v. Board ofEducation for Nursing, 177 Conn. 78, 86 (1979). The issue before the trial court is not whether it would have reached the same conclusion, but whether or not the agency decision is supported by the record. Williamsv. Liquor Control Commission, 175 Conn. 409, 414 (1978). The "substantial evidence" standard requires that an agency decision be affirmed "if the administrative record provides a substantial basis of fact from which the fact in issue can be reasonably inferred." Adriani v. Commission on HumanRights and Opportunities, 220 Conn. 307, 315 (1991). As stated in GriffinHospital v. Commission on Hospitals and Health Care, supra, 496 "the court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally or in abuse of its discretion."
Plaintiffs claim that the DSS decision must be overruled because it is based upon hearsay evidence. This contention has no merit for the following reasons:
(1) There is no specific prohibition against hearsay evidence in the Uniform Administrative Procedures Act. That Act provides at §4-178 (i):
Any oral or documentary evidence may be received but the agency shall, as a matter of policy, provide for CT Page 8558 the exclusion of irrelevant, immaterial or unduly repetitious evidence.
Thus hearsay evidence may be admitted as long as it is reliable and probative. Tomlin v. Personnel Appeal Board, 177 344, 348 (1979).Jutkowitz v. Department of Health Services, 220 Conn. 86, 108 (1991).
On this record, the testimony of witnesses that may be deemed hearsay were mainly corroborative of other documentary evidence and was reliable.
(2) Some of the evidence that plaintiffs claim was hearsay was exceptions to the hearsay rule. For example, audit work papers and attached invoices were properly admitted as business records, or public records, or both.
(3) Plaintiffs make a broad claim of error based upon the admission of hearsay evidence without identifying whether or not they objected to that particular evidence. Nor in their brief do they cite particular pages in the transcript of the hearing where the hearing officer made evidentiary rulings that the plaintiffs wish to have the court review.
The Rules of Appellate Procedure at § 67-4(3), provide that when error is claimed in any evidentiary ruling in a court of jury case, the brief or appendix shall include the question, the objection and ground upon which it was based, and the ruling. While these rules are not strictly applicable to the appeal of administrative decisions, they are instructive. The plaintiffs have the burden to present to the court an adequate record and basis upon which to review his claims of error. NewEngland Cable Television Assn., Inc. v. DPUC, 247 Conn. 95, 118 (1998). The transcript in this case is 2,469 pages. The court cannot be expected to examine all those pages of testimony to determine which questions were proper and which were not. See, State v. Sherman, 38 Conn. App. 371, 417
(1995).
 II.
The second plaintiffs' claim for error is that the hearing officer misapplied the law. In essence the plaintiffs argue that DSS decision found plaintiffs committed fraud without proof beyond a reasonable doubt that they acted with a fraudulent intent.
First, the standard of proof is not beyond a reasonable doubt, but clear and convincing evidence and this the hearing officer found to establish fraud. Secondly, intent may be inferred from facts and circumstances. United States v. Thomas, 241 Conn. 569, 589 (1997). CT Page 8559 Misrepresentations made recklessly may also provide the basis for a fraud claim. Clark v. Haggard, 141 Conn. 668, 673 (1994); Kilduff v. Adams,Inc., 219 Conn. 314, 329 (1991) Fn. 15. The plaintiffs claim that the posting of personal items to expense account of Countryside was a series of bookkeeping mistakes. However, the plaintiffs' failure to supervise their bookkeeping staff was in itself evidence of their reckless management of Countryside. The plaintiffs' signing the cost reports without reading them or even understanding them, knowing full well they would be the basis for rates paid to the facility, is substantial evidence that plaintiffs were recklessly indifferent to the truth in their submission of financial information to DSS. Their submission of cost reports containing obviously false reporting, especially under oath, evidences reckless indifference to the truth which is sufficient proof of fraudulent intent. Moreover the testimony of plaintiffs' employees to the effect they were working on plaintiffs' residence, corroborated by voluminous documentary evidence, amply supports the conclusion of fraud.
The DSS decision also found additional grounds for imposing sanctions. The Medicaid provider agreement requires Medicaid providers to comply with Medicaid standards as prescribed by the federal government and to "keep such records as are necessary to allow audits of medical and other records." Other relevant state regulations require that Medicaid providers maintain supporting records that must be available for review for ten years from the date of the previous audit. Regulations also provide that accurate time records shall be maintained for all persons paid salaries or wages. The DSS found substantial evidence that plaintiffs had violated these state and federal Medicaid regulations and the Medicaid provider agreement by (1) accepting reimbursement from Medicaid program for costs that were never paid by them; (2) claiming costs on their 1994 and 1995 cost reports and accepting payment from Medicaid for these costs knowing they were not related to patient care; (3) failing to maintain documentation for expenditures and time records for persons to whom they paid salaries or wages; and (4) failing to keep records necessary to allow audits of Countryside records. These findings amply support imposition of sanctions against the plaintiffs.
 III.
The third claim of the plaintiffs is that the order lacks adequate standard for the calculation of the overpayment by the DSS to the plaintiffs and the recommended suspension is "over zealous."
The DSS ordered that plaintiffs make restitution for the amount of overpayment set forth in schedules I and II of the notice of violations. Overpayments reflected in those schedules were determined by the hearing CT Page 8560 officer based upon reliable and credible evidence. These were the payments plaintiffs could not establish that they were entitled to under the Medicaid program. After adjusting for the disallowed costs, the allowable costs are put into the formula for determining nursing home rates. The proper per diem rate is then calculated. The per diem rate that results from this calculation is then deducted from the per diem rate that actually was paid based on false and fraudulent cost reports submitted by the plaintiffs. The difference in these two per diem rates is then multiplied by the number of Medicaid patient days. The product of that multiplication is the total overpayment which the plaintiffs are required to reimburse the DSS. This manner of calculation is consistent with DSS practices and regulations.
The plaintiffs also claim that the plaintiffs' suspension from the Medicaid program is over zealous. Regulations of Connecticut State Agencies § 17-83k-S provides that when there has been a violation of federal and state laws, rules and regulations governing the Medicaid program, the sanctions that may be imposed include "(2) suspension from participation." The imposition of such a penalty is clearly within the discretion of DSS, and this court will not substitute its own judgment or discretion for that of the agency. Hartford Electric Light Company v.Water Resources Commission, 162 Conn. 89, 107-108 (1971). The general rule is that if the sanctions are within the limits prescribed by law "the matter lies within the exercise of the [agencies'] discretion and cannot be successfully challenged unless the discretion has been abused."Gibson v. Connecticut Medicaid Examining Board, 141 Conn. 218, 230
(1954). Here, the penalty imposed by DSS is within the range of penalties authorized by state regulations and the findings upon which the sanctions were imposed are fully supported by substantial evidence on the record.
 IV.
Plaintiffs' final claim is that their constitutional rights of due process was impaired by the vast amount of pre-hearing and pre-decision publicity. These claims stem from a news item in the Hartford Courant on December 16, 1998, in which Attorney General Richard Blumenthal is quoted as saying that the plaintiffs were guilty of the most "egregious" and "blatant" abuse of Medicaid funds he has ever seen, and from a news release of the Attorney General's office, dated April 7, 1997, in which Attorney General Blumenthal and Department of Social Services Deputy Commissioner Michael P. Starkowski charged the plaintiffs with allegedly bilking the state of over a million dollars in Medicaid money in a nursing home scheme.
There is no question that in an administrative agency proceeding, the parties are entitled to be heard and have the issues determined by an CT Page 8561 impartial and unbiased tribunal. Huck v. Inland Wetlands and WatercoursesAgency, 203 Conn. 525, 536 (1987). Under Connecticut law there exists a presumption that agency administrators who serve as adjudicators are unbiased. Clishan v. Board of Police Commissioners, 223 Conn. 354, 62. This presumption can be rebutted by showing bias, but the burden of establishing that bias rests on the party making the contention.Petrowski v. Norwich Free Academy, 199 Conn. 231, 236, appealed dismissed479 U.S. 802 (1986). To overcome the presumption, the plaintiff . . . must demonstrate actual bias, rather than potential bias . . . unless the circumstances indicate a probability of such bias "too high to be constitutionally tolerable." Rado v. Board of Education, 216 Conn. 541,556 (1990).
At the hearing of this appeal the plaintiffs never requested the opportunity to present evidence to show that the news items referred to above created an actual bias in the hearing officer. TransportationGeneral, Inc. v. Insurance Department, 36 Conn. App. 587, 550 (1955). The mere presentation of the news items without a showing of how they affected the hearing officer's conduct of the proceeding is insufficient to establish bias. As noted in Transportation General, Inc. v. Departmentof Insurance, 236 Conn. 75, 77 (1996), "the test for administrative disqualification is inherently fact-bound." Here there is simply no evidence upon which the court can make a finding of bias. Without the factual record in the case that the decision maker has exhibited "actual bias . . . or so egregious an appearance of bias as to taint the fundamental fairness of the administrative proceeding" a claim of bias and prejudice must fail. Transportation General v. Department ofInsurance, 236 Conn. at 77.
The plaintiffs having failed to sustain their grounds for this appeal, the appeal is dismissed.
 ___________________ ROBERT SATTER JUDGE TRIAL REFEREE