## BARRY W. HULTMAN ET AL. *v.* DEPARTMENT OF SOCIAL SERVICES

Superior Court          Judicial District of          File No. CV990422879S
                        New Haven

Memorandum filed June 21, 2000

*Barry W. Hultman* and *Dorothy Hultman,* pro se, the plaintiffs.

*Robert Teitelman,* assistant attorney general, with whom was *Richard Blumenthal,* attorney general, for the defendants.

## INTRODUCTION

HON. ROBERT SATTER, JUDGE TRIAL REFEREE. This is an appeal from an order of the defendant, the department of social services (department), suspending the plaintiffs, Barry W. Hultman and Dorothy Hultman, from the medicaid program and ordering restitution by the plaintiffs, to the department, of overpayments received by the plaintiffs.

The facts are as follows. During the period from October 1, 1993, through September 30, 1995, Countryside Manor, Inc. (Countryside), was a long-term health care facility in Bristol, furnishing goods and services to beneficiaries of the medicaid program. During that period, Dorothy Hultman was the president and Barry W. Hultman was the administrator of Countryside. Long-term health care facilities participating in the medicaid program file cost reports on an annual basis to allow the department to determine their rate of medicaid reimbursement. These cost reports are signed under oath by the owners and administrators of the facilities. The plaintiffs each signed, under oath, the 1994 and the 1995 cost reports submitted on behalf of Countryside to the department. They each certified that they had read the reports and that the information was "true and correct"

to the best of their knowledge "under the penalty of perjury." They also certified that all expenses presented in the reports, as a basis for securing reimbursement for medicaid patients, were incurred to provide patient care at Countryside.

Union Tell, an accounting firm, prepared Countryside's 1994 and 1995 cost reports. On May 26, 1995, a representative of Union Tell wrote to Barry W. Hultman and notified him that Union Tell would not sign the 1994 cost report as preparer because Union Tell could not accurately determine from the records the allowable cost basis for purposes of the medicaid rate computation. Thomas Demchak, an accountant at Union Tell, informed the department's Gary Richter of several concerns regarding the 1994 and 1995 cost reports. The department has a contract with Ernst & Young to audit the cost reports of its long-term health care facilities. In the case of the audit for the 1994 and 1995 cost reports filed by Countryside, Ernst & Young, together with an accounts supervisor in the quality assurance unit of the department, participated in the "agreed upon procedures review" of those reports. When the audit was completed, Countryside was in bankruptcy. The plaintiffs were no longer operating the facility. The bankruptcy court appointed a trustee and a receiver/manager as administrator. The trustee sent a preliminary draft of the audit report to the plaintiffs outlining the proposed disallowances and a letter offering the plaintiffs the opportunity to explain why these proposed disallowances should be reduced before finalizing the audit report. Barry W. Hultman responded that the audit report was not valid, but he did not agree to meet with the department or discuss with the department the draft audit report.

On April 4, 1997, the department issued a notice of regulatory violations and proposed sanctions to the plaintiffs. On April 17, 1997, the plaintiffs filed an answer

denying each allegation of the notice. Hearings over the course of several days were held regarding this matter in October, November and December, 1997. The hearings were closed on December 3, 1997. The hearing officer filed a proposed final decision on November 25, 1998. The plaintiffs filed exceptions to the proposed decision. On December 31, 1998, the department over-ruled the exceptions and adopted the hearing officer's proposed final decision as its final decision. The department ordered that Dorothy Hultman be suspended from the medicaid program for a period of ten years and Barry W. Hultman be suspended from the medicaid program for a period of twenty years, or upon full payment of restitution, whichever is longer. It also ordered that the plaintiffs pay back the amount of overpayments by the department to them as set forth in the schedules annexed to the notice of violations, reduced by the amount of payroll taxes paid to the Internal Revenue Service by the bankruptcy trustee, and by $1000 posted in error.

The plaintiffs have timely appealed that administrative decision and they clearly have standing, because they are statutorily aggrieved.

In its notice to the plaintiffs of regulatory violations, the department specifically alleged that the plaintiffs: (1) knowingly and wilfully made or caused to be made false statements and false representations of material facts, for the purpose of claiming payments for services provided to medicaid beneficiaries by Countryside; (2) accepted payment for goods and services provided to medicaid beneficiaries which exceeds the amount authorized by law for such goods and services; (3) failed to adhere to conditions established by law for Countryside's participation in the medicaid program by engaging in practices that were inconsistent with sound fiscal and business practices, resulting in unnecessary costs to the medicaid program; (4) failed to comply with

medicaid provider agreement provisions regarding the maintenance of records; and (5) failed to comply with applicable provisions of the provider agreement, regulations and statutes governing reimbursement for medicaid costs.

At the hearings before the hearing officer, the plaintiffs were represented by counsel and had the opportunity to cross- examine the witnesses. The hearing officer made ninety-six specific findings of fact. Included were findings that the plaintiffs failed to maintain time records for Countryside employees, the salaries and wages paid to these employees were not supported by documentation, and salaries paid to these employees, including Barry W. Hultman, were not related to patient care. Among the costs in the cost reports that were disallowed were the expenses of a trip the plaintiffs made to India, meals bought at Hooters, the purchase of guns and ammunition, and the cost of supplies and materials for the plaintiffs' residence constructed at 82 Meadow Ridge in Avon. Also disallowed were accounts payable for longer than one year and expenses that exceeded the caps. The hearing officer further found that the testimony of Barry W. Hultman, as to salaries that were disallowed by Countryside itself, was not credible.

Based on these findings of fact, the hearing officer concluded that the department presented substantial evidence that the plaintiffs violated the state and federal medicaid regulations and the medicaid provider agreement by: (1) accepting reimbursement from the medicaid program for costs that were never paid by them; (2) claiming costs in their 1994 and 1995 cost reports and accepting payments from medicaid for these costs knowing they were not related to patient care; (3) failing to maintain documentation for expenditures and time records for persons to whom they paid

salaries or wages; and (4) failing to keep records necessary to allow audits of Countryside's records. He further concluded that the plaintiffs knowingly and wilfully made false representations in the 1994 and 1995 cost records for the purpose of claiming payments, thereby engaging in fraudulent acts. The hearing officer concluded that the plaintiffs' conduct violated § 17-83k-3 (1), (5), (8) and (9) of the Regulations of Connecticut State Agencies.[1] The hearing officer finally concluded that the disallowance of costs in schedules I and II of the notice of regulatory violations and proposed sanctions was based upon substantial evidence.

As indicated previously, the recommended order of the hearing officer was that the plaintiffs be required to reimburse the department for overpayments as set forth in schedules I and II of the notice of violations, reduced by the amount of payroll taxes paid to the Internal Revenue Service by the bankruptcy trustee and by the $1000 that was posted in error. The hearing officer further recommended that the commissioner of social services suspend both plaintiffs from the medicaid program.

---

[1] Section 17-83k-3 of the Regulations of Connecticut State Agencies provides in relevant part: "Violations of rules, regulations, standards and laws

"All vendors are subject to the federal and state laws and rules and regulations governing the programs in which they participate. Following are examples of violations by vendors of these laws, rules or regulations which constitute good cause for the imposition of administrative sanctions against such vendors:

"(1) Accepting payment for goods provided to and/or services performed for any beneficiary under Chapter 302 of the Connecticut General Statutes, which payment exceeds the amount(s) due or authorized by law for such goods and/or services. . . .

"(5) Knowingly and wilfully making, or causing to be made, any false statement or misrepresentation of material fact for the purpose of claiming or determining payment. . . .

"(8) Any of the fraudulent acts and/or false reporting proscribed under federal or state statutes.

"(9) Failure of a vendor to comply with any provision of a contract or agreement which is in effect between said vendor and the Department of Income Maintenance."

The findings of fact and the proposed order of the hearing officer were adopted and approved by the commissioner of social services.

The plaintiffs assert the following grounds for appeal: (1) the hearing officer's findings of fact are based entirely on unreliable hearsay; (2) the conclusions of law of the decision do not logically or reasonably follow from the facts; (3) the order lacks adequate standards for the calculation of the overpayments by the department to the plaintiffs, and the recommended suspension is overzealous; and (4) the plaintiffs' constitutional rights to due process were hindered due to the vast amount of publicity prior to both the hearing and the decision.

Initially, it is important to state the standard of review for appeals from administrative agencies. General Statutes § 4-183 (j) provides in pertinent part: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." The function of the trial court is not "to retry the case or to substitute its judgment for that of the administrative agency." (Internal quotation marks omitted.) *Griffin Hospital* v. *Commission on Hospitals & Health Care*, 200 Conn. 489, 496, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986). Questions concerning the weight of the evidence and the credibility of witnesses are within the province of the agency. *Leib* v. *Board of Examiners for Nursing*, 177 Conn. 78, 86, 411 A.2d 42 (1979). The issue before the trial court is not whether it would have reached the same conclusion, but whether the agency decision is supported by the record. *Williams* v. *Liquor Control Commission*, 175 Conn. 409, 414, 399 A.2d 834 (1978). The "substantial evidence" standard requires that an agency decision be affirmed "if the [administrative record] provides a substantial basis of fact from which the fact in issue can be reasonably inferred." (Internal

quotation marks omitted.) *Adriani* v. *Commission on Human Rights & Opportunities*, 220 Conn. 307, 315, 596 A.2d 426 (1991). As stated in *Griffin Hospital* v. *Commission on Hospitals & Health Care*, supra, 496, "[t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion."

I

The plaintiffs claim that the department's decision must be overruled because it is based upon hearsay evidence. This contention has no merit for the following three reasons.

First, there is no specific prohibition against hearsay evidence in the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq. General Statutes § 4-178 (i) of that act provides: "Any oral or documentary evidence may be received, but the agency shall, as a matter of policy, provide for the exclusion of irrelevant, immaterial or unduly repetitious evidence." Thus, hearsay evidence may be admitted as long as it is reliable and probative. *Jutkowitz* v. *Dept. of Health Services*, 220 Conn. 86, 108, 596 A.2d 374 (1991); *Tomlin* v. *Personnel Appeal Board*, 177 Conn. 344, 348, 416 A.2d 1205 (1979). On this record, testimony of witnesses that may be deemed hearsay was mainly corroborative of other documentary evidence and was reliable.

Second, some of the evidence that the plaintiffs claim was hearsay involved exceptions to the hearsay rule. For example, audit work papers and attached invoices were properly admitted as business records, or public records, or both.

Third, the plaintiffs make a broad claim of error based upon the admission of hearsay evidence without identifying whether they objected to that particular evidence.

Further, in their brief, they do not cite particular pages in the transcript of the hearing where the hearing officer made evidentiary rulings that the plaintiffs wish to have the court review.

Section 67-4 (3) of the rules of appellate procedure provides that when error is claimed in any evidentiary ruling in a court or jury case, the brief or appendix shall include the question, the objection and ground upon which it was based, and the ruling. While the foregoing rules are not strictly applicable to the appeal of administrative decisions, they are instructive. The plaintiffs have the burden to present to the court an adequate record and basis upon which to review their claims of error. *New England Cable Television Assn., Inc.* v. *Dept. of Public Utility Control*, 247 Conn. 95, 118, 717 A.2d 1276 (1998). The transcript in the present case is 2469 pages. The court cannot be expected to examine all those pages of testimony to determine which questions were proper and which were not. See *State* v. *Sherman*, 38 Conn. App. 371, 417, 662 A.2d 767, cert. denied, 235 Conn. 905, 665 A.2d 905 (1995).

II

The plaintiffs' second claim of error is that the hearing officer misapplied the law. In essence, the plaintiffs argue that the department's decision found the plaintiffs committed fraud without proof beyond a reasonable doubt that they acted with fraudulent intent.

First, the applicable standard of proof is not proof beyond a reasonable doubt, but proof by clear and convincing evidence, and it was by this latter standard the hearing officer found to establish fraud. Second, "[i]ntent may be inferred from facts and circumstances." (Internal quotation marks omitted.) *Banks* v. *Thomas*, 241 Conn. 569, 589, 698 A.2d 268 (1997). Misrepresentations made recklessly may also provide the basis for a fraud claim. *Kilduff* v. *Adams, Inc.*, 219

Conn. 314, 329 n.15, 593 A.2d 478 (1991); *Clark* v. *Haggard*, 141 Conn. 668, 673, 109 A.2d 358 (1954). The plaintiffs claim that the posting of personal items to Countryside's expense account was a series of bookkeeping mistakes. The plaintiffs' failure to supervise their bookkeeping staff, however, was in itself evidence of their reckless management of Countryside. The plaintiffs' signing of the cost reports without reading them or even understanding them, knowing full well they would be the basis for rates paid to the facility, is substantial evidence that the plaintiffs were recklessly indifferent to the truth in their submission of financial information to the department. Their submission of cost reports containing obviously false reporting, especially under oath, evidences reckless indifference to the truth, which is sufficient proof of fraudulent intent. Moreover, the testimony of the plaintiffs' employees to the effect that they were working on the plaintiffs' residence, corroborated by voluminous documentary evidence, amply supports the conclusion of fraud.

The department's decision also found additional grounds for imposing sanctions. The medicaid provider agreement requires medicaid providers to comply with medicaid standards as prescribed by the federal government and to "keep such records as are necessary to allow audits of medical and other records." Further, a relevant state regulation requires that medicaid providers maintain supporting records that must be available for review for ten years from the date of the previous audit. Regs., Conn. State Agencies § 17-311-164 (a). Another regulation also provides that "accurate time records shall be maintained for all persons paid salaries or wages." Regs., Conn. State Agencies § 17-311-56. The department found substantial evidence that the plaintiffs had violated these state and federal medicaid regulations and the medicaid provider agreement by: (1) accepting reimbursement from the medicaid program

for costs that were never paid by them; (2) claiming costs on their 1994 and 1995 cost reports and accepting payment from medicaid for these costs knowing they were not related to patient care; (3) failing to maintain documentation for expenditures and time records for persons to whom they paid salaries or wages; and (4) failing to keep records necessary to allow audits of Countryside's records. These findings amply support imposition of sanctions against the plaintiffs.

### III

The third claim of the plaintiffs is that the order lacks an adequate standard for the calculation of the overpayments by the department to the plaintiffs and the recommended suspension is "overzealous."

The department ordered that the plaintiffs make restitution for the amount of overpayments set forth in schedules I and II of the notice of violations. Overpayments reflected in those schedules were determined by the hearing officer based upon reliable and credible evidence. These were the payments the plaintiffs could not establish that they were entitled to under the medicaid program. After adjusting for the disallowed costs, the allowable costs are put into the formula for determining nursing home rates. The proper per diem rate is then calculated. The per diem rate that results from this calculation is then deducted from the per diem rate that actually was paid based on false and fraudulent cost reports submitted by the plaintiffs. The difference in these two per diem rates is then multiplied by the number of medicaid patient days. The product of that multiplication is the total overpayment which the plaintiffs are required to reimburse the department. This manner of calculation is consistent with department practices and regulations.

The plaintiffs also claim that the plaintiffs' suspension from the medicaid program is "overzealous." Section

17-83k-5 (2) of the Regulations of Connecticut State Agencies provides that when there has been a violation of federal and state laws, rules and regulations governing the medicaid program, the sanctions that may be imposed include "[s]uspension from participation." The imposition of such a penalty is clearly within the discretion of the department, and this court will not substitute its own judgment or discretion for that of the agency. *Hartford Electric Light Co.* v. *Water Resources Commission*, 162 Conn. 89, 107–108, 291 A.2d 721 (1971). The general rule is that if the sanctions are within the limits prescribed by law "the matter lies within the exercise of the [agency's] discretion and cannot be successfully challenged unless the discretion has been abused." *Gibson* v. *Connecticut Medicaid Examining Board*, 141 Conn. 218, 230, 104 A.2d 890 (1954). Here, the penalty imposed by the department is within the range of penalties authorized by state regulations and the findings upon which the sanctions were imposed are fully supported by substantial evidence on the record.

## IV

The plaintiffs' final claim is that their constitutional rights of due process were impaired by the vast amount of publicity prior to both the hearing and the decision. This claim stems from a news item in the Hartford Courant on December 16, 1998, in which attorney general Richard Blumenthal is quoted as saying that the plaintiffs were guilty of the most "egregious" and "blatant" abuse of medicaid funds he has ever seen, and from a news release of the attorney general's office, dated April 7, 1997, in which Blumenthal and the department's deputy commissioner, Michael P. Starkowski, charged the plaintiffs with allegedly bilking the state of over one million dollars in medicaid money in a nursing home scheme.

There is no question that in an administrative agency proceeding, the parties are entitled to be heard and have

the issues determined by an impartial and unbiased tribunal. *Huck* v. *Inland Wetlands & Watercourses Agency*, 203 Conn. 525, 536, 525 A.2d 940 (1987). Under Connecticut law, there exists a presumption that agency administrators who serve as adjudicators are unbiased. *Clisham* v. *Board of Police Commissioners*, 223 Conn. 354, 362, 613 A.2d 254 (1992). This presumption can be rebutted by showing bias, but the burden of establishing that bias rests on the party making the contention. *Petrowski* v. *Norwich Free Academy*, 199 Conn. 231, 236, 506 A.2d 139, appeal dismissed, 479 U.S. 802, 107 S. Ct. 42, 93 L. Ed. 2d 5 (1986). "To overcome the presumption, the plaintiff . . . must demonstrate actual bias, rather than mere potential bias . . . unless the circumstances indicate a probability of such bias 'too high to be constitutionally tolerable.' " *Rado* v. *Board of Education*, 216 Conn. 541, 556, 583 A.2d 102 (1990).

At the hearing of this appeal, the plaintiffs never requested the opportunity to present evidence to show that the aforementioned news items created an actual bias in the hearing officer. *Transportation General, Inc.* v. *Ins. Dept.*, 36 Conn. App. 587, 596, 652 A.2d 1033 (1995). The mere presentation of the news items without a showing of how they affected the hearing officer's conduct of the proceeding is insufficient to establish bias. As noted in *Transportation General, Inc.* v. *Dept. of Ins.*, 236 Conn. 75, 77, 670 A.2d 1302 (1996), "the test for administrative disqualification is inherently fact-bound." Here, there is simply no evidence upon which the court can make a finding of bias. Without the factual record in the case that the decision maker has exhibited "actual bias . . . or so egregious an appearance of bias as to taint the fundamental fairness of the administrative proceedings" a claim of bias and prejudice must fail. Id.

## CONCLUSION

The plaintiffs having failed to sustain their grounds for this appeal, the appeal is dismissed.