**In re Barry Wayne HULTMAN, Debtor.**

**In re Dorothy Hultman, Debtor.**

**State of Connecticut, Department of Social Services, Plaintiff,**

v.

**Barry Wayne Hultman, Defendant.**

**State of Connecticut, Department of Social Services, Plaintiff,**

v.

**Dorothy Hultman, Defendant.**

**Bankruptcy Nos. 98–22041, 97–25375. Adversary Nos. 00–2107, 00–2106.**

United States Bankruptcy Court, D. Connecticut.

May 24, 2001.

Linda A. Russo, Assistant Attorney General for the State of Connecticut, Hartford, CT, for Plaintiff.

Dorothy Hultman, North Branford, CT, Pro Se Debtor—Defendant.

Barry Wayne Hultman, North Branford, CT, Pro Se Debtor—Defendant.

*RULING ON PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT*

ROBERT L. KRECHEVSKY,
Bankruptcy Judge.

### I.

This single ruling deals with two motions for summary judgment filed by the State of Connecticut, Department of Social Services ("DSS") in mirror-image complaints brought against each debtor—Barry Wayne Hultman ("Barry") and Dorothy Hultman ("Dorothy") (together "the Hultmans"). The issue raised by the motions, i.e. the application of the doctrine of collateral estoppel, is identical in each complaint, as indicated by the Hultmans filing, in effect, a single joint response to the motions.

### II.

Barry filed his Chapter 7 petition on May 8, 1998, and Dorothy, his mother, filed her Chapter 7 petition on December 16, 1997. DSS, on September 7, 2000, timely filed similar adversary proceedings in each of the Hultmans' Chapter 7 cases, seeking denials of discharge under § 727 or, in the alternative, rulings that the judgment debts owed DSS by the Hultmans are nondischargeable under § 523. Each complaint contains seven counts. Counts One and Two seek denial of discharge pursuant to § 727(a)(3) alleging that each of the Hultmans falsified or failed to maintain adequate business records from which his or her financial condition could be ascertained. Count Three is based on the same allegations but, pursuant to § 727(a)(7), concerns the Hultmans' conduct as insiders in connection with the bankruptcy of Countryside Manor, Inc. ("Countryside"). Counts Four, Five, Six and Seven seek to have the judgment debts held nondischargeable pursuant to §§ 523(a)(2)(A) and (B) for fraud; § 523(a)(4) for violation of fiduciary duty; and § 523(a)(4) for embezzlement. DSS supported its motions for summary judgment with affidavits, documents, and agency and court rulings, upon which the following undisputed background is based.

### III.

From October 1, 1993 to September 30, 1995, Dorothy was the president and Bar-

ry was the administrator of Countryside, a long-term care facility participating in the Medicaid program. On April 4, 1997, pursuant to state statute, DSS issued to the Hultmans a notice of regulatory violations and proposed sanctions ("the notice of violations"). The Hultmans filed answers denying each of the DSS allegations. A hearing officer held hearings over 19 days in October, November and December, 1997 at which the Hultmans were "represented by counsel and had the opportunity to cross examine the witnesses." *Hultman v. Connecticut Department of Soc. Svcs.*, 2000 WL 960811 at *2 (Conn.Super.2000). The hearing officer filed a proposed final decision on November 25, 1998.

On December 31, 1998 DSS adopted the proposed final decision as its final decision, suspending Dorothy and Barry from the Medicaid program for periods of ten and twenty years, respectively, and ordering payment of restitution to DSS of approximately $1,150,000.00, an amount equal to DSS's overpayments under the Medicaid program, reduced by certain credits, as generally set forth in schedules annexed to the notice of violations. In the DSS final decision, the hearing officer stated:

> "I find that, as a matter of law, the Respondents knowingly and willfully made false misrepresentations of material fact in their 1994 and 1995 Cost Reports for the purpose of claiming payment by the Department I find that such conduct constitutes a fraudulent act or false reporting.... I conclude that the Department presented clear and unequivocal evidence that the Respondents intentionally deceived the Department by claiming reimbursements for items that are clearly not reimbursable under the Medicaid program. Moreover, the Respondents' poor accounting practices, poor recordkeeping and repeated and numerous submittals of improper and undocumented claims for payment that

benefited only the Respondents and their family members collectively constitute reckless misrepresentation sufficient to find fraud by Respondents."

(Ex. B at 13.)

The Hultmans timely appealed the final decision of DSS to the Connecticut Superior Court which, on June 21, 2000, concluded that the Hultmans had failed to sustain their grounds for the appeal and dismissed the appeal. In its memorandum of decision, the Superior Court considered the Hultmans' claims that DSS had not met its burden of proof in concluding that the Hultmans committed fraud. The Superior Court stated:

> "First, the standard of proof is ... clear and convincing evidence and this the hearing officer found to establish fraud. Secondly, intent may be inferred from facts and circumstances.... Their submission of cost reports containing obviously false reporting, especially under oath, evidences reckless indifference to the truth which is sufficient proof of fraudulent intent. Moreover, the testimony of plaintiffs' employees to the effect they were working on plaintiff's residence, corroborated by voluminous documentary evidence, amply supports the conclusion of fraud."

*Hultman*, 2000 WL 960811 at *4.

The Hultmans did not appeal the ruling of the Superior Court.

## IV.

DSS contends that the doctrine of collateral estoppel, as applied to its final decision, affirmed by the Superior Court, precludes the Hultmans from disputing the findings of fact and conclusions of law stated therein; that such findings and conclusions are sufficient under the Bankruptcy Code to warrant denying the Hultmans discharges or excepting the judgment

debts from any discharges granted; and that DSS is therefore entitled to judgment as a matter of law. The Hultmans, appearing pro se, argue that this court is not bound by the state-court decision and should redetermine the nature and amount of the debt.

## V.

Fed.R.Civ.P. 56(c), made applicable in bankruptcy proceedings by Fed. R. Bankr.P. 7056, provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (*quoting* Fed.R.Civ.P. 56(c)).

### A. Doctrine of Collateral Estoppel

■ The doctrine of collateral estoppel applies in bankruptcy discharge and dischargeability proceedings. *Grogan v. Garner,* 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Collateral estoppel prevents relitigation of those issues necessarily determined in prior proceedings of state courts and administrative agencies acting in a judicial capacity. *See Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 480, 102 S.Ct. 1883, 1896, 72 L.Ed.2d 262 (1982) ("It is well established that judicial affirmance of an administrative determination is entitled to preclusive effect."); *cf. United States v. Utah Construction and Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966) ("When an administrative agency is acting in a judicial capacity and resolved disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not

hesitated to apply res judicata to enforce repose.").

■ State-law determines the applicability of collateral estoppel to a prior state-court decision. *See Spartz v. Cornell (In re Cornell),* 178 B.R. 45, 48 (Bankr. D.Conn.1995). The Connecticut Supreme Court has summarized the state's collateral estoppel standards as follows:

> The fundamental principles underlying the doctrine of collateral estoppel are well established.... Collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.... Collateral estoppel expresses no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest.

*Gladysz v. Planning and Zoning Comm.,* 256 Conn. 249, 260 (2001) (citations and quotation marks omitted).

### B. Nondischargeability Under § 523(a)(2)(A)

■ Bankruptcy Code § 523(a)(2)(A) provides that "[a] discharge ... does not discharge an individual debtor from any debt ... (2) for money ... to the extent obtained by (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

In opposing a motion for summary judgment, the Hultmans "may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R. Civ.P. 56(e). Although the Hultmans deny that they obtained Medicaid funds by fraud, the doctrine of collateral estoppel applies to the DSS final decision which specifically

found, by clear and convincing evidence, that the Hultmans had obtained excess Medicaid payments by actual fraud. *See Grogan v. Garner*, 498 U.S. at 285, 111 S.Ct. 654 ("A creditor who successfully obtained a fraud judgment in a jurisdiction that requires proof of fraud by clear and convincing evidence would be indifferent to the burden of proof regarding nondischargeability [which the Supreme Court held to be the preponderance of the evidence standard] because he could invoke collateral estoppel in any event."). The Hultmans are precluded from relitigating the state court's decision that the judgment debt is a debt for money obtained by actual fraud. Accordingly, there is no genuine issue as to any material fact and DSS is entitled to judgment, as a matter of law, that the judgment debt is nondischargeable in accordance with § 523(a)(2)(A).

VI.

In accordance with the foregoing discussion, the motions of DSS for summary judgment are granted with respect to Count Four of the complaints. The judgment debts owed by the Hultmans to DSS are nondischargeable and appropriate judgments shall enter in each adversary proceeding. Having thus concluded that the judgment debts are nondischargeable under § 523(a)(2)(A), the court need not reach the remaining counts of the complaints. It is

SO ORDERED.

*JUDGMENT*

The court having granted the motion of the plaintiff for summary judgment by ruling of even date, it is

ORDERED AND ADJUDGED that the debt due, in accordance with the December 31, 1998 decision of DSS, as affirmed on June 21, 2000 by the Connecticut Superior Court, No. CV 9900422879S, from Barry Wayne Hultman, the debtor, to the plaintiff is not discharged in this bankruptcy case.