**UNITED STATES of America, Appellee,**

v.

**Barry HULTMAN, Defendant–Appellant.**

**No. 01–1199.**

United States Court of Appeals, Second Circuit.

Dec. 18, 2001.

Paul F. Thomas, Esq., New Haven, CT, for Appellant.

Jeffrey A. Meyer, Assistant United States Attorney, (John A. Danaher, United States Attorney for the District of Connecticut, on the brief), New Haven, CT, for Appellee.

Present WALKER, Chief Judge, JACOBS, and SACK, Circuit Judges.

## SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of said district court be and it hereby is AFFIRMED.

Defendant-appellant Barry Hultman appeals from the March 30, 2001 judgment of the district court convicting him of two counts of embezzlement against a bankruptcy estate, in violation of 18 U.S.C. § 153, and sentencing him principally to 27 months' imprisonment, a $200 special assessment, and three years of supervised release conditioned upon defendant's payment of restitution in the amount of $620,452.81 and a fine of $6,000.

Hultman was formerly the administrator of Countryside Manor, Inc. ("CSM"), a long-term care facility that received significant federal funding from Medicaid. In November of 1994, CSM filed a petition for bankruptcy. Hultman continued to administrate CSM, which was permitted to act as a debtor-in-possession, until July 1996, when an independent bankruptcy trustee was appointed. By a superseding indictment returned on June 27, 2000, Hultman was charged with 52 counts of embezzlement from a bankruptcy estate based on his misappropriation of the bankrupt CSM's assets to pay his personal expenses. On August 15, 2000, Hultman pleaded guilty to two counts of embezzlement in violation of 18 U.S.C. § 153.

On appeal, Hultman challenges the district court's inclusion of $435,616 that Hultman misapplied from CSM for personal expenses prior to the filing of the bankruptcy petition as relevant conduct in calculating the amount of loss under United States Sentencing Guidelines § 2B1.1(b). The district court's rationale for doing so was that Hultman's misapplication of these funds constituted a violation of 18 U.S.C.

§ 666 ("Section 666") and that this offense shared "a common monetary objective and a similar course of conduct" with Hultman's embezzlement from the bankruptcy estate.

Hultman contends that (1) the payment of family expenses with CSM funds prior to the bankruptcy petition did not violate Section 666; (2) the district court's reliance on the finding by a hearing officer of the State of Connecticut Department of Social Services in an unrelated case that Hultman acted with fraudulent intent in misapplying the pre-petition finds was misplaced because that finding was upheld on appeal on a theory of reckless misrepresentation, *see Hultman v. Connecticut Dep't of Soc. Servs.,* No. CV990422879S, 2000 WL 960811, at *1 (Conn.Super.Ct. June 21, 2000); and (3) the district court's reliance on the hearing officer's findings were misplaced because those findings pertained to Hultman's *scienter* when he submitted false cost reports, and not to his *scienter* when he improperly misapplied funds in alleged violation of Section 666, *see id.* These arguments lack merit.

Section 666 is violated when any agent of an organization that receives, in any one year period, in excess of $10,000 in federal funding

> embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that—
>
> > (i) is valued at $5,000 or more, and
> >
> > is owned by, or is under the care, custody, or control of such organization. . . .

18 U.S.C. 666(a)(1)(A).

Hultman first argues that his use of CSM pre-petition funds to pay his personal expenses did not violate Section 666 because

the impropriety of the practice was the later allocation of the expenses to patient care in cost reports submitted to establish future reimbursement rates . . . . and reimbursement payments to CSM in the pre-bankruptcy period were based upon cost reports from earlier years. Accordingly, any misstatements in the 1994 and 1995 cost reports did not cause loss, let alone prove loss.

Appellant's Br. at 7–8 (internal quotation marks omitted). Hultman's argument appears to be that there was no Section 666 violation because the money Hultman converted came from CSM, not Medicaid, and that the only effect on Medicaid was that the reporting of these expenses on the Medicaid cost reports inflated future reimbursement rates.

■ Contrary to Hultman's argument, however, a Section 666 violation does not require that the funds converted be federal funds. *See United States v. Urlacher,* 784 F.Supp. 61, 63–64 (W.D.N.Y.) ("There is no requirement that the property actually embezzled be federal money or traceable to federal money. *Any* property, regardless of its source, which is embezzled from the local government or agency falls under the statute, so long as the property is under the care or control of the government or agency concerned and so long as that entity receives more than $10,000 a year in federal benefits.") (citing *United States v. Webb,* 691 F.Supp. 1164, 1168 (N.D.Ill. 1988)), *aff'd* 979 F.2d 935 (2d Cir.1992). The plain language of the statute simply requires that funds rightfully belonging to a federally funded organization be knowingly converted to the use of another without authority. Hultman has made no claim that he was authorized to use CSM's funds for his personal benefit; thus, his acts of writing checks to himself, using CSM funds to pay his personal expenses, and putting employees that were building

Hultman's private home on the CSM payroll clearly fall into this category. *See United States v. Wright*, 160 F.3d 905, 907 (2d Cir.1998) (statute violated by administrators of care facility for using facility's funds for personal spending money and to pay personal expenses); *United States v. Sanderson*, 966 F.2d 184, 186–87 (6th Cir. 1992) (statute violated by having employees paid by federally funded organization perform private contract work).

■ We also reject Hultman's argument that the district court erroneously relied on the hearing officer's finding that Hultman acted with fraudulent intent because that finding was upheld on appeal on a theory of reckless misrepresentation. A district court's finding of fact for purposes of sentencing need only be based on a preponderance of the evidence. *See United States v. McLeod*, 251 F.3d 78, 82 (2d Cir.2001). We will not overturn those findings unless they are clearly erroneous. *United States v. Carpenter*, 252 F.3d 230, 234 (2d Cir.2001). Here, the district court's conclusion that Hultman's misapplication of CSM funds violated Section 666 rested in part on the findings of the hearing officer in the state case. The hearing officer, after defining fraud in the context of Medicaid as "an intentional deception or misrepresentation made by a person with knowledge that the deception could result in some unauthorized benefit to himself or some other person," found that Hultman "knowingly and willfully made false representations in [his] 1994 and 1995 Cost Reports for the purpose of claiming payment, thereby engaging in fraudulent acts." On appeal from that decision, Hultman argued to the Connecticut Superior Court that the erroneous Medicaid claims were simply the result of a series of bookkeeping mistakes. *See Hultman*, 2000 WL 960811, at *4. As Hultman points out, the court held that even if they were bookkeeping errors, they

evidenced reckless indifference to the truth, which was sufficient for a fraud claim. *Id.* However, the court went on to hold that the finding of fraud was also supported by the hearing officer's findings that Hultman and his mother "(1) accept[ed] reimbursement from [the] Medicaid program for costs that were never paid by them; [and] (2) claim[ed] costs on their 1994 and 1995 cost reports and accept[ed] payment from Medicaid for these costs knowing they were not related to patient care." *Id.* at *5. These knowing acts, found by the hearing officer to have been established by clear and convincing evidence, *see id.* at *4, amply supported the district court's finding of fraudulent intent by a preponderance of the evidence. We find no error in the district court's conclusion that Hultman's misrepresentations in the 1994 and 1995 Cost Reports were intentional.

Finally, we reject Hultman's argument that the district court improperly relied upon the hearing officer's findings regarding Hultman's *scienter* when he filed the false cost reports to conclude that he acted intentionally when he misdirected CSM funds and, thus, violated Section 666. We conclude that the district court could have reasonably found that the deliberate falsification of the cost reports was evidence that the misapplication of funds, which continued after the falsified 1994 Cost Report was prepared, was also intentional.

For the reasons set forth above, the judgment of the district court is hereby AFFIRMED.